Argued and submitted June 6; in *State v. Guzman*, S066328, decision of Court of Appeals reversed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings; in *State v. Heckler*, S066373, decision of Court of Appeals reversed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings December 27, 2019

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# RICKY LEE GUZMAN,
*Petitioner on Review.*

## (CC 15CR52393) (CA A164152) (SC S066328 (Control))

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# TIMOTHY JAMES HECKLER,
*Petitioner on Review.*

## (CC 16CR33772) (CA A163979) (SC S066373)

455 P3d 485

Defendants unsuccessfully moved to exclude certain prior convictions, arguing that those convictions were not "statutory counterparts" to ORS 813.010 that could raise the seriousness of their present driving under the influence of intoxicants offense under ORS 813.011. The Court of Appeals affirmed in both cases. *Held*: (1) For a foreign conviction to be a statutory counterpart to ORS 813.010 for the purposes of ORS 813.011, the conviction must be for an offense with elements that closely match those of ORS 813.010; (2) defendant Guzman's Kansas conviction was not under a statutory counterpart to ORS 813.010; (3) defendant Heckler's Colorado convictions were not under a statutory counterpart to ORS 813.010.

In *State v. Guzman*, S066328, the decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings. In *State v. Heckler*, S066373, the decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

En Banc

On review from the Court of Appeals.*

_____

\* S066328 on appeal from Deschutes County Circuit Court, Michael Adler, Judge. 294 Or App 552, 432 P3d 387 (2018); S066373 on appeal from Deschutes County Circuit Court, Wells B. Ashby, Judge. Alta Jean Brady, Judge (Amended Judgment). 294 Or App 142, 430 P3d 224 (2018).

Kyle Krohn, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioners on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

Robert M. Wilsey, Assistant Attorney General, Salem, argued the cause and filed the briefs for respondent on review. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

NELSON, J.

In *State v. Guzman*, S066328, the decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings. In *State v. Heckler*, S066373, the decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**NELSON, J.**

These consolidated cases concern two defendants who were convicted of driving under the influence of intoxicants (DUII), a crime that is ordinarily a misdemeanor but that, in each case, was elevated to a felony based on the defendant's two prior convictions from other jurisdictions. *See* ORS 813.011 (DUII is a Class C felony if the person has been convicted at least two times in the past ten years of DUII in violation of ORS 813.010 or its statutory counterpart in another jurisdiction). The question before us is whether the foreign laws under which defendants were convicted are "statutory counterparts" to ORS 813.010, the statute criminalizing DUII in Oregon. After analyzing the relevant statutes, we conclude that the appropriate inquiry requires "close element matching," *State v. Carlton*, 361 Or 29, 42, 388 P3d 1093 (2017), between ORS 813.010 and the foreign offense, an approach that we have previously employed in giving legal effect to convictions from other jurisdictions. Applying that standard to defendants' foreign convictions, we conclude that none of the convictions at issue in this case were under a statutory counterpart to ORS 813.010.

## I.  BACKGROUND

A.  State v. Guzman

Defendant Guzman was charged by indictment with felony DUII and other crimes. With respect to the DUII charge, the indictment alleged that Guzman had two prior convictions for DUII from other jurisdictions, including a 2015 Kansas conviction. Guzman moved to exclude the Kansas conviction, contending that it was not a "statutory counterpart" to ORS 813.010 and therefore could not be a basis for treating his Oregon offense as a felony.

Guzman argued that the statute under which he had been convicted, Kan Stat Ann § 8-1567(a), was broader than ORS 813.010 in two respects: it applied to "attempting to operate any vehicle" and it allowed conviction based on a blood alcohol concentration of .08 "as measured within three hours of the time of operating or attempting to operate a vehicle." Both, he argued, made Kan Stat Ann § 8-1567(a) meaningfully broader than ORS 813.010, with the result

that it could not be a statutory counterpart. The state argued, relying on *State v. Mersman*, 216 Or App 194, 172 P3d 654 (2007), *rev den*, 344 Or 390 (2008), that those differences in statutory elements did not matter, because Kan Stat Ann § 8-1567(a) shared a "use, role, or characteristics" with ORS 813.010.

The trial court denied Guzman's motion and ruled that the Kansas conviction was admissible to prove that defendant had two prior convictions for DUII or a statutory counterpart in another jurisdiction. Guzman was tried by a jury. At trial, the state introduced records of Guzman's foreign convictions, including his Kansas conviction, as exhibits, and the jury found him guilty of felony DUII based on those records.

Guzman appealed, assigning error to the trial court's denial of his motion to exclude the Kansas conviction.[1] He argued that *Mersman*, and subsequent Court of Appeals cases, had been overruled by this court's decision in *Carlton*, 361 Or 29, which had been decided after Guzman's trial. In light of *Carlton*, Guzman argued, the term "statutory counterpart" in ORS 813.011 applied only to foreign offenses virtually identical to ORS 813.010.

The Court of Appeals disagreed, stating without explanation that *Carlton* did not overrule *Mersman* and concluding that Guzman's Kansas conviction was properly considered a conviction under a statutory counterpart. *State v. Guzman*, 294 Or App 552, 432 P3d 387 (2018).

Guzman petitioned for review, which we allowed.

B.   State v. Heckler

Defendant Heckler was charged by indictment with felony DUII and reckless driving. With respect to the DUII offense, the indictment alleged that he had previously been "convicted of driving while under the influence of intoxicants in violation of the laws of this state or another jurisdiction at least two times in the 10 years prior to the date

---

[1] Guzman raised a second issue on appeal concerning whether certain evidence of his intoxicated driving had been wrongly admitted. We did not allow review of that issue.

of the current offense." The indictment listed two separate Colorado convictions, which occurred in 2006 and 2010.

Prior to trial, Heckler moved to exclude both prior convictions. He noted that both convictions had been for violations of Colo Rev Stat § 42-4-1301(1)(b), which defines the offense of "driving while ability impaired." That offense, he argued, was a lesser included offense of Colorado's principal offense of "driving under the influence," Colo Rev Stat § 42-4-1301(1)(a), and was therefore not a "statutory counterpart" to ORS 813.010. Relying on *Mersman*, the state responded by arguing that the Colorado offense had the same "use, role, or characteristics" as ORS 813.010 and was therefore a statutory counterpart. The trial court ruled for the state and did not exclude the convictions.

Heckler entered a conditional no contest plea to felony DUII, reserving his right to challenge the trial court's pretrial ruling on appeal. *See* ORS 135.335(3) (authorizing conditional pleas). After the trial court entered a judgment of conviction based on that guilty plea, Heckler appealed, assigning error to the denial of his motion and arguing that neither of his Colorado convictions involved a violation of a "statutory counterpart" to ORS 813.010. The Court of Appeals affirmed, relying on its decisions in *State v. Donovan*, 243 Or App 187, 256 P3d 196 (2011), and *Mersman*. *State v. Heckler*, 294 Or App 142, 430 P3d 224 (2018).

Heckler petitioned for review, which we allowed.

II.   "STATUTORY COUNTERPART"

This case turns on the meaning of the term "statutory counterpart" in ORS 813.011, a statute enacted by the voters through a ballot measure approved in 2010. In pertinent part, that statute provides that the crime of DUII will be a felony "if the defendant has been convicted of driving under the influence of intoxicants in violation of ORS 813.010, or its statutory counterpart in another jurisdiction, at least two times in the 10 years prior to the date of the current offense." ORS 813.011(1). The parties approach that interpretive question differently. Defendants' primary argument is that "statutory counterpart" should be read narrowly, to include only foreign offenses with elements the same or nearly the same as ORS 813.010. Defendants

argue that the text and context of ORS 813.011 support that reading. They also rely on *Carlton*, where we addressed the meaning of "statutory counterpart" in several statutes—although not ORS 813.011—in the course of interpreting the term "comparable offenses." Defendants argue that *Carlton*, as precedent of this court construing the term "statutory counterpart," should guide, if not govern, our interpretation of "statutory counterpart" in ORS 813.011. Defendants also argue that a narrow interpretation of ORS 813.011 is required in order to avoid two constitutional problems: a violation of principles of nondelegation and a potential conflict with the Supreme Court's decision in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000).

The state, by contrast, focuses on a single piece of context. The state argues that, when ORS 813.011 was enacted in 2010, two decisions of the Court of Appeals—*Mersman* and *State v. Rawleigh*, 222 Or App 121, 192 P3d 292 (2008)—had interpreted the term "statutory counterpart" to include foreign offenses with the same "use, role, or characteristics" as ORS 813.010 and that those decisions had not required close element matching. The state argues that the voters who enacted ORS 813.011 would have had their understanding informed primarily by that context.

We approach this case using our ordinary interpretive methodology. *See State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009); *Burke v. DLCD*, 352 Or 428, 432-33, 290 P3d 790 (2012) (applying that methodology to a law enacted by the people). Although it is neither party's focus, we begin our analysis by examining the text of ORS 813.011. We then turn to *Carlton*. Although we agree with defendants that *Carlton* is relevant precedent concerning the meaning of the term "statutory counterpart," we conclude that it does not control the construction of ORS 813.011. Finally, we turn to the Court of Appeals decisions that the state relies on and to defendants' constitutional arguments.

A.   *Text*

ORS 813.011(1) provides:

"Driving under the influence of intoxicants under ORS 813.010 shall be a Class C felony if the defendant has been convicted of driving under the influence of intoxicants in

violation of ORS 813.010, or its statutory counterpart in another jurisdiction, at least two times in the 10 years prior to the date of the current offense."

The first important term in that text is "convicted of." That phrase immediately and substantially limits the inquiry created by ORS 813.011(1). The relevant question is not whether the defendant has, in fact, driven under the influence of intoxicants; what matters is whether that conduct formed the basis for a conviction.

The next key phrase is "driving under the influence of intoxicants," which specifies the particular conduct of which the defendant must have been convicted. Relevant context for that phrase comes from ORS 813.010(1), which provides:

"A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;

"(b) Is under the influence of intoxicating liquor, cannabis, a controlled substance or an inhalant; or

"(c) Is under the influence of any combination of intoxicating liquor, cannabis, a controlled substance and an inhalant."

In light of that context, "driving under the influence of intoxicants" could be read to refer to the precise elements of ORS 813.010. But more immediate context suggests otherwise: ORS 813.011(1) refers to convictions for "driving under the influence of intoxicants in violation of ORS 813.010, *or* its statutory counterpart in another jurisdiction." (Emphasis added.) That indicates that "driving under the influence of intoxicants" should not necessarily be read to be coextensive with ORS 813.010, at least to the extent that the term "statutory counterpart" includes offenses that are not identical to ORS 813.010.

That brings us to the term "statutory counterpart." Only one of the senses of "counterpart" set out in *Webster's Third New Int'l Dictionary* 520 (unabridged ed 2002) seems relevant here:

> "**3 a :** one remarkably similar to another **:** a person or thing so like another that it seems a duplicate \*\*\* **b :** equivalent **:** something or someone having the same use, role, or characteristics often in a different sphere or period[.]"

The listed subsenses have the same core of meaning—a high degree of similarity. The range from "remarkabl[e]" similarity to "so like another that it seems a duplicate" to "same \*\*\* characteristics" is not great. Any ambiguity in the phrase "statutory counterpart" does not arise from uncertainty about how similar to ORS 813.010 a foreign offense must be to qualify as a statutory counterpart—it must be very similar—but from uncertainty about the respects in which it must be similar.

Read in context, however, that ambiguity is easily resolved. The phrase "statutory counterpart" refers to a law under which the defendant was "convicted of driving under the influence of intoxicants." ORS 813.011. As a result, a "statutory counterpart" to ORS 813.010 must, like ORS 813.010 itself, be an offense that includes the elements of "driving under the influence of intoxicants." It follows that the relevant similarity between ORS 813.010 and its statutory counterparts is that they have those elements in common—not that they share some other "characteristics," "use," or "role."

B. State v. Carlton

We turn to *Carlton*, a decision where we discussed other uses of the term "statutory counterpart," along with various similar terms throughout our laws. Defendants argue that this court construed "statutory counterpart" in *Carlton* to require close element matching and that we should adhere to that holding here. They argue that, even if *Carlton* is not read that expansively, it at least established a presumption that "statutory counterpart" should be read narrowly, in the absence of context indicating otherwise. The state argues that our discussion of "statutory counterpart" in *Carlton* was *dicta* and that, in any event, *Carlton* does not preclude the argument that it makes in this case.[2]

---

[2] The state also makes a misdirected argument that we should not look to *Carlton* as context because it postdates the adoption of ORS 813.011 by the voters in 2010. However, the only significance that we accord *Carlton*, and the only significance that defendants argue that we should lend it, is for its precedential

In *Carlton*, we construed ORS 137.719, a statute providing for presumptive life sentences for defendants who had previously been sentenced two or more times for felony sex offenses, including "[s]entences imposed by any other state or federal court for comparable offenses." ORS 137.719(3)(b)(B). The defendant in *Carlton* had three prior convictions under California Penal Code § 288(a), which defines an offense that "may be proved by any touching of a child, even outwardly innocent touching, if the touch is sexually motivated." *Carlton*, 361 Or at 44.

Beginning with the term "comparable offenses," we consulted the dictionary definition of "comparable," concluding that

> "the word 'comparable' has two primary senses. Using the first sense, that word could refer to a degree of similarity that makes comparison appropriate based on the commonality of salient features of the things being compared (meaning that they are alike in substance or essentials). Alternatively, using the second sense, the word could describe a very high degree of similarity (meaning virtually identical)."

*Id.* at 37. We reasoned that "[t]he bare text of ORS 137.719 (3)(b)(B)" could support either meaning, and therefore turned to context, "which includes other related statutes, particularly statutes that concern how a defendant's prior foreign convictions or sentences should be considered for purposes of sentencing on an Oregon conviction." *Id.* at 38.

We observed that many other statutes gave effect to foreign convictions using somewhat different terms and noted that "each of the terms that are used in the cited examples—'statutory counterpart,' 'would constitute,' and 'the elements' would 'constitute'—are consistent in meaning with the more restrictive primary meaning of 'comparable.'" *Id.* at 41. We also found it "notable that the assault statutes

---

effect. Precedential decisions from this court are one source of context that we consider at the first level of construction. *Liberty Northwest Ins. Corp., Inc. v. Watkins*, 347 Or 687, 692, 227 P3d 1134 (2010) ("As part of that first level of analysis, this court considers its prior interpretations of the statute."); *State v. Murray*, 343 Or 48, 52, 162 P3d 255 (2007) ("At the first level of analysis of a statute, this court also considers case law interpreting that statute.").

use 'equivalent crime in another jurisdiction' and 'statutory counterpart in any jurisdiction' interchangeably." *Id.*

　　We reasoned that

"[t]hose examples reveal a consistent pattern. Where the purpose of considering a prior conviction is to identify and then 'count' specific criminal history, generally speaking, the legislature (both directly and by approving the Sentencing Guidelines) has required that the historical offense be the same as or nearly the same as a qualifying Oregon offense."

*Id.* at 41-42. We also observed that there were good reasons why the legislature would want to adopt a relatively narrow rule:

"It is the prerogative of the Oregon legislature to determine what factual elements will give rise to criminal responsibility under Oregon law. When another state adopts a different legislative policy, no matter how defensible or similar to what the Oregon legislature might (or might not) have adopted if it had specifically considered the matter—that state has made its own public policy judgment. Unless a less restrictive meaning is evident from the text and context of an Oregon conviction-counting statute, there is no reason to presume that the Oregon legislature intended to adopt another state's policy by reference, without the attendant deliberative safeguards that Oregon's own legislative processes prescribe."

*Id.* at 42. We therefore concluded that the legislature meant "comparable offenses" to incorporate the more restrictive meaning of "comparable" so as to "refer[] to offenses with elements that are the same as or nearly the same as the elements of an Oregon felony sex crime, not to offenses that merely share a core similarity with such an offense." *Id.* at 43.

　　The state takes the position that anything we said about the term "statutory counterpart" in *Carlton* was *dicta* and is therefore not controlling here. *See Halperin v. Pitts*, 352 Or 482, 494, 287 P3d 1069 (2012) (noting that although a prior construction in *dictum* may be persuasive, "we are not *required* to follow it as precedent" (emphasis added)). The state argues that anything that we said about "statutory

counterpart" was not necessary to our decision in *Carlton* because the issue before the court was the meaning of a different term—"comparable offenses"—as it was used in ORS 137.719(3)(b)(B), and that we could have interpreted that term and that statute without reference to ORS 813.010.

As we have explained, the term *dictum* "refers to a statement that is not necessary to the court's decision." *Engweiler v. Persson/Dept. of Corrections*, 354 Or 549, 558, 316 P3d 264 (2013). In *Carlton*, however, our analysis of terms related to "comparable offenses," including "statutory counterpart," was how this court resolved a textual ambiguity in ORS 137.719(3)(b)(B). Even if the state were correct that that ambiguity could have been resolved in a different manner, we have repeatedly rejected the argument that the availability of an alternate route to the same result makes the reasoning that we did rely upon *dicta*. *See Engweiler*, 354 Or at 558-59; *State v. Stevens*, 364 Or 91, 98, 430 P3d 1059 (2018).

Thus, *Carlton*'s conclusion—that when Oregon statutes give legal effect to foreign convictions, those statutes generally require a form of close element matching, "[u]nless a less restrictive meaning is evident from the text and context," 361 Or at 42—is relevant to interpreting statutes that use the term "statutory counterpart" for that purpose, including ORS 813.011. That presumption favors defendants' narrow reading of "statutory counterpart" and is consistent with the most straightforward reading of the text of ORS 813.011. Yet nothing in *Carlton* forecloses the argument advanced by the state in this case. The state does not take issue with *Carlton*'s general presumption in favor of a narrow reading of "statutory counterpart." It argues, however, that ORS 813.011 does not require close element matching because it was adopted at a time when the Court of Appeals had interpreted "statutory counterpart" more broadly—an argument that a broader reading *is* "evident from the text and context." 361 Or at 42. We therefore turn to that additional piece of context—the decisions of the Court of Appeals prior to 2010—to determine whether it supports a different reading of "statutory counterpart" in ORS 813.011 than that indicated by its text and other context.

C. *Prior Court of Appeals Decisions as Context*

        The parties disagree about when and whether we should treat decisions of the Court of Appeals as context that the legislature—or the people acting in their legislative capacity—would have relied on in enacting new laws. Defendants argue that we have rarely, if ever, looked to Court of Appeals decisions as context in the absence of specific legislative history indicating that the legislature was aware of a particular decision. They contend that reliance on Court of Appeals decisions should be limited to such circumstances. The state, by contrast, argues that there is no meaningful difference between decisions of this court and those of the Court of Appeals.

        We have often recognized that "[c]ourt decisions that existed at the time that the legislature enacted a statute—and that, as a result, it could have been aware of—may be consulted in determining what the legislature intended in enacting the law as part of the context for the legislature's decision." *OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 593, 341 P3d 701 (2014). And this court has adverted to the principle that "[w]hen a statute has been construed by the court of last resort of the state and is later re-enacted, it is deemed that the Legislature has adopted the court's construction unless the contrary purpose is clearly shown by the language of the act." *Overland et al. v. Jackson et al.*, 128 Or 455, 463-64, 275 P 21 (1929). This court also has indicated that, although "the Court of Appeals is not the court of last resort," the same principle applies when legislative history indicates that the legislature was aware of the Court of Appeals' interpretation. *State v. Ford*, 310 Or 623, 637 n 21, 801 P2d 754 (1990).

        When interpreting statutes with text borrowed from foreign jurisdictions, our decisions similarly accord a special status to prior interpretations by the highest court of the relevant jurisdiction:

> "If the Oregon legislature adopts a statute or rule from another jurisdiction's legislation, we assume that the Oregon legislature also intended to adopt the construction of the legislation that the highest court of the other jurisdiction had rendered before adoption of the legislation in Oregon."

*Jones v. General Motors Corp.*, 325 Or 404, 418, 939 P2d 608 (1997); *see also State v. Cooper*, 319 Or 162, 167-68, 874 P2d 822 (1994) ("When the Oregon legislature adopts a statute modeled after another jurisdiction, an interpretation of that statute by the highest court of that jurisdiction that was rendered in a case decided before adoption of the statute by Oregon is considered to be the interpretation of the adopted statute that the Oregon legislature intended."); *State v. Stockfleth/Lassen*, 311 Or 40, 50, 804 P2d 471 (1991) ("[W]hen Oregon adopts the statute of another jurisdiction, the legislature is presumed also to adopt prior constructions of the statute by the highest court of that jurisdiction.").

But, although we have accorded greater significance to decisions of the highest court of another jurisdiction, we have never altogether discounted decisions of lower appellate courts of that jurisdiction, even in the absence of legislative history specifically indicating that our legislature was aware of those decisions. For example, in *Lindell v. Kalugin*, 353 Or 338, 355, 297 P3d 1266 (2013), interpreting an Oregon law based on a federal rule of civil procedure that had not been construed by the United States Supreme Court, we treated a consistent pattern of lower "federal court decisions as at least highly persuasive as to the intentions of the Oregon legislature in borrowing from the federal rules." And in *State v. Edmonds*, 364 Or 410, 422-23, 435 P3d 752 (2019), we interpreted an Oregon rule of evidence that had been derived from federal law, and we looked to a Second Circuit decision as context. Although we emphasized that that decision had proved influential on other federal appellate courts, and that no federal appellate court had reached a different conclusion on the point in question, we did not discount the decision because it did not issue from the Supreme Court or because the legislature had not specifically indicated its awareness of the decision. *Id.* at 423-24.

Although defendants may be correct that we typically have not looked to Court of Appeals decisions as context in the absence of an indication that the legislature was aware of them, we see no reason to elevate that practice to a firm rule. Given our treatment of intermediate appellate court decisions from other jurisdictions, it would be anomalous to refuse to consider Court of Appeals decisions as context in

the absence of specific legislative history. Simultaneously, however, our decisions have never indicated that decisions of an intermediate appellate court are as relevant as decisions of the jurisdiction's highest appellate court. Legislators, like other reasonable readers of court decisions, are aware that a decision of the Court of Appeals does not settle the law to the same degree as does a decision of this court.

It also makes little sense, in this context, not to recognize differences *between* Court of Appeals decisions. On one end of the spectrum, a longstanding Court of Appeals decision interpreting a statute that this court never has considered is more likely to be known to the legislature. On the other end of the spectrum, it makes less sense to assume—absent a specific indication—that the legislature is aware of every recent Court of Appeals decision and that it immediately treats all such decisions as fully determinative of the meaning of an interpreted statute. That is particularly the case if the decision in question is in tension with other decisions, leaves important questions unanswered, or has had its validity called into question. Similar considerations have informed our reliance on intermediate appellate court decisions from other jurisdictions.[3]

## D.    State v. Mersman *and* State v. Rawleigh *as Context*

The state argues that in 2010, when ORS 813.011 was adopted by the voters as part of Measure 73, the voters would have had their understanding of the term "statutory counterpart" shaped primarily by two Court of Appeals opinions, *Mersman* and *Rawleigh*. *Mersman* interpreted the term "statutory counterpart" in ORS 813.010(5), where, as in ORS 813.011, it allows certain foreign convictions to elevate violations of ORS 813.010(1) into a felony. 216 Or App at 196-97. *Mersman* concluded that an Alaska offense was a statutory counterpart to ORS 813.010 because the two statutes "have the same use, role, or characteristics." *Id.* at 204. *Rawleigh* interpreted the phrase "statutory counterpart" as it appeared in ORS 813.215, where it governs which foreign convictions or charges make a defendant ineligible for DUII

---

[3] The parties also disagree on whether it is appropriate to treat prior judicial decisions as context when interpreting laws enacted by the people. We need not take up that question because we find that context unhelpful for other reasons.

diversion. 222 Or App at 123. *Rawleigh*, relying on *Mersman*, reasoned that a Washington offense was a statutory counterpart to ORS 813.010, concluding that "common uses, roles, and characteristics are sufficient, despite the possible differences in the substantive scope of the respective statutes." *Id.* at 128. Because of those decisions, the state argues, voters in 2010 would have understood a "statutory counterpart" to ORS 813.010 to include any statute with the same "use, role, or characteristics" as ORS 813.010.

The first difficulty with the state's argument is that, in 2007, the legislature amended ORS 813.010(5), ORS 813.215, and several other statutes using the term "statutory counterpart" to include two additional classes of foreign offenses, in addition to statutory counterparts to ORS 813.010, that would trigger the same Oregon consequences:

> "(B) A driving under the influence of intoxicants offense in another jurisdiction that involved the impaired driving or operation of a vehicle, an aircraft or a boat due to the use of intoxicating liquor, cannabis, a controlled substance, an inhalant or any combination thereof.

> "(C) A driving offense in another jurisdiction that involved operating a vehicle, an aircraft or a boat while having a blood alcohol content above that jurisdiction's permissible blood alcohol content."

Or Laws 2007, ch 879, § 3.[4]

Neither *Mersman* nor *Rawleigh* were decided under the amended statutes. The first Court of Appeals decision to discuss the significance of those changes was *Donovan*, 243 Or App 187, in 2011. In *Donovan*, the Court of Appeals considered the effect of the amendment on ORS 813.215(1)(a), which disqualifies defendants from the DUII diversion program based on pending charges for DUII under ORS 813.010 or a qualifying foreign statute. The Court of Appeals explained in *Donovan* that

> "[t]hose disqualifying offenses are phrased in the disjunctive— that is, they are presented as alternative means of rendering

___

[4] The quoted text corresponds to the addition to ORS 813.010(5). That text is virtually identical to that added to other statutes. *See* Or Laws 2007, ch 879, §§ 4-8, 10.

a person ineligible for diversion. Thus, we presume the legislature intended subparagraphs (B) and (C) [the new additions] to have independent meaning from subparagraph (A) [where the term "statutory counterpart" appears], rather than to be duplicative or illustrative of what a 'statutory counterpart' might be. Any other interpretation would mean the amendments were merely redundant of what was already in the statute.

"At first blush, then, the amendments to ORS 813.215 (1)(a) seem to narrow the meaning of 'statutory counterpart' by excluding from its ambit offenses that involve 'the impaired driving of a vehicle' or a violation of the BAC limit—offenses that we might otherwise conclude fall under subparagraph (A), the statutory counterpart provision, as we have previously interpreted it."

243 Or App at 196 (citations omitted). The Court of Appeals then observed that that was not the only permissible reading of the additions and turned to the legislative history of those amendments to confirm that the legislature had not intended to narrow the meaning of "statutory counterpart." *Id.* at 196-97.

Between the 2007 amendments and *Donovan*, a reasonable reader of ORS 813.010 or ORS 813.215 might have drawn the same "first blush" conclusion as the Court of Appeals and questioned whether *Mersman* and *Rawleigh* remained good law. Those decisions were not clear, much less definitive, indicators of what the phrase "statutory counterpart" meant in 2010, when ORS 813.011 was submitted to the voters. We also observe that *Mersman* and *Rawleigh* were decided within three years of ORS 813.011 being adopted. They are not, in other words, the type of longstanding, settled precedent to which we might accord greater weight as context.

The second problem with the state's argument is that prior constructions of statutory terms are only one source of context that we consider when interpreting a statute. Regardless of the significance accorded to those decisions of the Court of Appeals, other context in this case outweighs any conclusion that might be drawn from them. *See State v. Shaw*, 338 Or 586, 604, 113 P3d 898 (2005) (declining to

interpret a statute in accordance with a prior construction because other context was more persuasive). Here, the interpretation urged by the state conflicts with the canon of consistent usage, the principle that, "in the absence of evidence to the contrary, we ordinarily assume that the legislature uses terms in related statutes consistently." *State v. Cloutier*, 351 Or 68, 99, 261 P3d 1234 (2011); *see also Village at Main Street Phase II v. Dept. of Rev.*, 356 Or 164, 175, 339 P3d 428 (2014) ("the general assumption of consistency counsels us to assume that the legislature intended the same word to have the same meaning throughout related statutes unless something in the text or context of the statute suggests a contrary intention").

That presumption is particularly strong here. The term "statutory counterpart"—and the specific phrasing used in ORS 813.011—appears in approximately a dozen statutes pertaining to intoxicated driving.[5] Those statutes are interrelated. For example, ORS 813.011 elevates DUII to a felony upon a third conviction, and ORS 809.235(1)(b)(A)(ii) triggers a permanent license suspension upon a third conviction. Nearly all of those appearances of "statutory counterpart" predate *Mersman* and *Rawleigh*—in some cases by decades. The first use of "statutory counterpart" to refer to convictions from other jurisdictions came in 1981, when the term "statutory counterpart" was added to statutes pertaining to Oregon's DUII diversion program, where it disqualified individuals with foreign DUII convictions from eligibility. *Former* ORS 484.450(4)(a) (1981); Or Laws 1981, ch 803, § 18. After that, "statutory counterpart" appears to have become the legislature's go-to terminology when it wanted to count out-of-state intoxicated driving offenses for a purpose relating to Oregon's DUII statutes. *Mersman* and *Rawleigh* would not—could not—inform our interpretation

---

[5] *See, e.g.*, ORS 163.118(1)(d)(A) (elevation of conduct to first-degree manslaughter); ORS 163.185(1)(d)(A) (elevation of conduct to first-degree assault); ORS 809.235(1)(b)(A)(ii) (permanent revocation of driver's license); ORS 809.730 (1)(a)(B) (forfeiture of motor vehicle); ORS 813.010(5)(a)(A)(ii) (elevation of DUII to a felony); ORS 813.215(1)(a)(A)(ii) (disqualification from DUII diversion based on pending charges); ORS 813.220(7)(a)(B) (disqualification from DUII diversion based on subsequent charges or convictions); ORS 813.430(2)(b)(A)(ii) (increase in length of driver's license suspension); ORS 813.665(1)(a) (disqualification from employment as ignition interlock device technician).

of the many earlier appearances of "statutory counterpart" in Oregon's DUII statutes. Because the only reason the state offers for the adoption of the "use, role, or characteristics" approach is its appearance in *Mersman* and in *Rawleigh*, the state's argument is, in effect, that ORS 813.011 should mean something different from nearly all other uses of "statutory counterpart" in the context of DUII offenses. Given how the relevant statutes fit together, it seems implausible that the voters who adopted ORS 813.011 would have wanted its use of "statutory counterpart" to take on a different meaning.

For those reasons, we reject the state's argument that *Mersman* and *Rawleigh* control the meaning of "statutory counterpart" in ORS 813.011. The plain text of that statute combined with other, more relevant context, indicates that it requires close element matching between ORS 813.010 and a foreign offense.

E.   Apprendi *and Constitutional Avoidance*

For the most part, defendants do not offer an argument that foreign statutory counterparts must have elements identical to or narrower than ORS 813.010 in order to qualify. As we recognized in *Carlton*, close element matching requires "elements that are the same as or *nearly the same*" as the comparable Oregon offense. 361 Or at 43 (emphasis added). Defendants do argue, however, that constitutional avoidance weighs in favor of adopting a stricter approach. Defendants point to *Apprendi*, 530 US at 490, which held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." And defendants observe that the factual finding involved in ORS 813.011, whether a defendant has two prior convictions under ORS 813.010 or its statutory counterpart, is one that increases the maximum punishment available for the offense. Because of *Apprendi*, that inquiry, along with other uses of "statutory counterpart" to increase maximum sentences, must be submitted to a jury unless it falls within the prior conviction exception.[6]

---

[6]  In *Guzman*, the only of these cases to proceed to trial, the question of whether Guzman had prior qualifying convictions was submitted to the jury—avoiding

However, the close element matching approach adopted by *Carlton* falls within that exception. The only facts that must be found, to elevate a misdemeanor DUII to a felony under ORS 813.011, concern which prior convictions a defendant possesses, and the statutory elements of those offenses that are conclusively established by the record of conviction—not the conduct underlying that conviction. *See State v. Bray*, 342 Or 711, 723, 160 P3d 983 (2007) (stating that the prior conviction exception "includes only those facts that the conviction itself or the judicial record conclusively establishes"). Whether those elements "are the same as or nearly the same as the elements of" ORS 813.010(1), *Carlton*, 361 Or at 43, is a legal question, not an additional factual inquiry.

As defendants observe, some federal sentencing statutes apply a different, and stricter, legal test for which prior offenses trigger additional sentencing consequences. *See Descamps v. United States*, 570 US 254, 257, 133 S Ct 2276, 186 L Ed 2d 438 (2013) (explaining that a prior conviction triggers certain sentencing enhancements "only if the statute's elements are the same as, or narrower than, those of the generic offense"). But *Apprendi*, which is a rule about when factual questions must be submitted to a jury, does not require a particular legal test for which convictions trigger sentencing consequences. *See James v. United States*, 550 US 192, 214 & n 8, 127 S Ct 1586, 167 L Ed 2d 532 (2007), *overruled on other grounds by Johnson v. United States*, 576 US 591, 135 S Ct 2551, 192 L Ed 2d 569 (2015) (rejecting an *Apprendi* challenge to a judicial inquiry into whether an offense that was the subject of a prior conviction "involves conduct that presents a serious potential risk of physical injury to another" because that test required "statutory interpretation, not judicial factfinding"). Because close element matching, as articulated in *Carlton*, looks only to the elements of a defendant's prior convictions and does not involve an additional factual inquiry, it falls into the prior conviction exception. *Apprendi* does not offer a reason to prefer a different approach.

---

any *Apprendi* issue even if the prior conviction exception did not apply. We do not decide in this case whether ORS 813.011, or any other use of "statutory counterpart," permits or requires a different procedure.

F. *Close Element Matching When the Elements Are Nearly the Same*

Before we apply the close element matching approach to these cases, we discuss a question left unanswered in *Carlton*, but which is important here. As we explained in *Carlton*, close element matching requires a foreign offense to have "elements that are the same as or *nearly the same* as the elements of*" the Oregon crime to which it is compared. *Carlton*, 361 Or at 43 (emphasis added). In *Carlton*, we did not have occasion to discuss in depth how to determine when minor differences in the elements would not be disqualifying. Yet *Carlton* introduced two important factors to consider when evaluating a foreign offense with elements broader than those of the Oregon offense to which it is being compared, and those two factors are enough to resolve these cases.[7]

In *Carlton*, we considered whether Cal Penal Code § 288(a) was "comparable" to the Oregon offense of first-degree sexual abuse. We observed that Cal Penal Code § 288(a) overlapped with the Oregon offense of first-degree sexual abuse under some circumstances, but most of its applications did not involve that overlap: Oregon criminalized physical contact with intimate parts of a child with sexual intent; California's statute applied to any contact with a child with sexual intent. 361 Or at 44-45. We emphasized that the Oregon offense was "significantly narrower. It also prohibits sexually motivated conduct, but it proscribes only a limited category of sexually motivated conduct." *Id.* at 45. We therefore concluded that Cal Penal Code § 288(a) did not closely match the elements of first-degree sex abuse. *Id.* at 45.

Thus, the first factor to consider is how the additional breadth of the foreign statute compares with the overall scope of the relevant Oregon statute, in this case ORS 813.010. If the elements of a foreign offense extend to conduct not covered by ORS 813.010 only to an insignificant degree, then it makes sense to refer to the elements as nearly the same and to view the foreign offense as a statutory

---

[7] When a foreign offense differs from an Oregon offense only because it is narrower, that difference will not preclude the offense from being a close element match.

counterpart. By contrast, where, as in *Carlton*, the Oregon offense reaches only a subset of the conduct criminalized by the foreign offense, the difference is likely to preclude the foreign offense from qualifying as a close element match.

The second factor relates not to the breadth of the additional conduct proscribed by the foreign statute but to its nature. In *Carlton*, when comparing Cal Penal Code § 288(a) to first-degree sex abuse, we emphasized the nature of the conduct contained within the California statute's greater breadth:

> "[T]he California offense has only two conduct elements and may be proved by any touching of a child, even outwardly innocent touching, if the touch is sexually motivated. That means that the California offense could be committed simply by placing an arm around a child's shoulder, patting the top of a child's head, or helping a child put on a pair of shoes, if the physical contact—though experienced by the child as innocent—is made with a sexual purpose."

*Carlton*, 361 Or at 44 (internal citation removed). As that passage indicates, when the foreign offense reaches conduct that is less culpable than that involved in the Oregon offense, then that is an indication that the foreign offense is not a statutory counterpart. Culpability, for this purpose, is determined by examining how the conduct is treated under Oregon law. A difference in statutory elements that is confined to conduct that, although not proscribed in the same statute, is nevertheless proscribed and treated with the same or greater level of seriousness in Oregon is not likely to be a difference that will preclude the foreign offense from being a close element match. In such cases, the concern that giving legal effect to a foreign offense will "adopt another state's policy by reference, without the attendant deliberative safeguards that Oregon's own legislative processes prescribe," *Carlton*, 361 Or at 42, is lessened.

### III.  APPLICATION

#### A.  Guzman *and Kan Stat Ann § 8-1567(a)*

With those principles in mind, we turn to the application of the close element matching standard to the two foreign statutes at issue here, beginning with defendant

Guzman's case.[8] Guzman focuses on two differences between Kan Stat Ann § 8-1567 and ORS 813.010. First, he observes that Kan Stat Ann § 8-1567(a) can be satisfied by an "attempt." Second, he argues that, Kan Stat Ann § 8-1567 (a)(2) allows the state to obtain a conviction by showing that "alcohol concentration in the person's blood or breath, as measured within three hours of the time of operating or attempting to operate a vehicle, is 0.08 or more." As a result, Guzman contends, if a sober individual tries to start his or her car, gives up, and subsequently gets drunk, he or she has violated Kan Stat Ann § 8-1567(a)(2).

In *Carlton*, we began our close element matching analysis by determining what the elements of the relevant offenses were. 361 Or at 44. We do the same here. We then address whether Guzman is correct that Kan Stat Ann § 8-1567 is broader than ORS 813.010 and, finally, whether any overbreadth disqualifies the foreign statute from being a statutory counterpart.

ORS 813.010(1) provides:

"A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;

"(b) Is under the influence of intoxicating liquor, cannabis, a controlled substance or an inhalant; or

"(c) Is under the influence of any combination of intoxicating liquor, cannabis, a controlled substance and an inhalant."

We held in *State v. King*, 316 Or 437, 852 P2d 190 (1993), *overruled in part on other grounds by Farmers Ins. Co. v. Mowry*, 350 Or 686, 261 P3d 1 (2011), that the three

---

[8] In this court, Guzman assigns error only to the trial court's denial of his pretrial motion to exclude his prior Kansas conviction on the ground that it was not a statutory counterpart to ORS 813.010. Whether that conviction is a statutory counterpart is a question of law, so we review the trial court's determination for legal error.

ways of proving intoxication listed in ORS 813.010(1)(a)-(c) are not alternative elements defining separate offenses but, rather, "three sets of circumstances, any or all of which go to prove a single essential element (being under the influence of intoxicants)." *Id.* at 442. As a result, as is relevant here, the offense of DUII "has two elements. A conviction may result if a jury agrees beyond a reasonable doubt that the accused (1) drove a motor vehicle (2) while under the influence of intoxicants." *Id.* at 446.[9]

In examining foreign offenses, it is particularly important to be clear on the elements of the offense. As we have made clear in interpreting our own statutes, the text of a criminal statute, even if contained in a single section or paragraph, may set forth alternative elements, thereby creating multiple "separate offenses." *King*, 316 Or at 441-42. Conversely, as in *King* itself, a list joined by the word "or" may simply set forth different methods of proving a single element. *Id.* at 444; *see also State v. Pipkin*, 354 Or 513, 523-24, 316 P3d 255 (2013) (so holding regarding the trespass element of Oregon's burglary statute).

It bears emphasis that what we are concerned with in this context are the statutory elements of the offense, not the specifics of a defendant's misconduct. Facts that are not elements, even if charged and admitted, are irrelevant to the "statutory counterpart" analysis. *See, e.g.*, *Mathis v. United States*, ___ US ___, ___, 136 S Ct 2243, 2251-53, 195 L Ed 2d 604 (2016) (so holding in the context of federal conviction-counting statutes and observing practical and constitutional difficulties that might arise were nonelement facts to be taken into consideration). Conversely, however, where a law sets forth alternative elements, effectively defining multiple offenses, even if those offenses are located within the same subsection or referred to by the same label, the record of conviction may provide a basis for "determin[ing] what crime, with what elements, a defendant was convicted of." *Mathis*, ___ US at ___, 136 S Ct at 2249.

---

[9] ORS 813.010(4) provides that "the offense described in this section *** is applicable upon any premises open to the public," but that provision is not at issue in this case.

With that in mind, we turn to Kan Stat Ann § 8-1567:[10]

> "(a)  Driving under the influence is operating or attempting to operate any vehicle within this state while:

> "(1)  The alcohol concentration in the person's blood or breath as shown by any competent evidence, including other competent evidence, as defined in K.S.A. 8-1013(f)(1), and amendments thereto, is 0.08 or more;

> "(2)  the alcohol concentration in the person's blood or breath, as measured within three hours of the time of operating or attempting to operate a vehicle, is 0.08 or more;

> "(3)  under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle;

> "(4)  under the influence of any drug or combination of drugs to a degree that renders the person incapable of safely driving a vehicle; or

> "(5)  under the influence of a combination of alcohol and any drug or drugs to a degree that renders the person incapable of safely driving a vehicle."

The Kansas statute does not set forth alternative elements defining multiple crimes. The Kansas Supreme Court has held that

> "[t]he crime of driving under the influence requires two primary elements—that is, driving and simultaneously being under the influence. The driving element can be established through proof that the defendant either 'operated' or 'attempted to operate' the vehicle, while the 'under the influence' requirement can be established through proof of any of the factual circumstances described in subsections (a)(1) through (a)(5)."

*State v. Ahrens*, 296 Kan 151, 160, 290 P3d 629, 635 (2012). As a result, the terms "operating or attempting to operate" merely "'describe the factual circumstances in which a material element'—*i.e.*, driving—'may be proven.'" *Id.* at 160, 290 P3d at 635 (quoting *State v. Brown*, 295 Kan 181, 196-97, 284 P3d 977, 990 (2012)). The same appears to be

---

[10]  We quote the current version of the statute, as there has been no pertinent change since the time of Guzman's conviction.

true of the alternative methods of proving the intoxication element. Therefore, it does not matter which of those factual circumstances was present in Guzman's case, even if that information could be discerned from the record of conviction. Kan Stat Ann § 8-1567(a) defines a single crime; the only question is whether that crime has the same or nearly the same elements as ORS 813.010.

In this case, our analysis begins and ends with the first difference that Guzman points to, that Kan Stat Ann § 8-1567(a) prohibits "operating or attempting to operate any vehicle" while intoxicated. By contrast, ORS 813.010(1) applies only if a "person drives a vehicle." We have not weighed in on what it means to "drive" a vehicle, but the Court of Appeals has held for close to 50 years that driving, for the purposes of DUII, requires putting a vehicle into motion. *See State v. Bilsborrow*, 230 Or App 413, 417, 215 P3d 914 (2009); *State v. Martinelli*, 6 Or App 182, 485 P2d 647 (1971). We accept that construction for the purposes of this case, as neither party has argued that we should give the term a different meaning.

The Kansas Supreme Court has interpreted "operating" to require movement of the vehicle. *State v. Kendall*, 274 Kan 1003, 1008, 58 P3d 660, 669 (2002). We see no difference, therefore, between the Kansas Supreme Court's interpretation of "operating" and the Oregon Court of Appeals' interpretation of "drives." Guzman's argument, however, centers on the term "attempting to operate." And we agree with Guzman that, by extending to attempted operation, Kan Stat Ann § 8-1567(a) criminalizes conduct that ORS 813.010(1) does not. For example, in *State v. Darrow*, 304 Kan 710, 374 P3d 673 (2016), the defendant had been found by an officer in the driver's seat of a car with its engine running and, upon waking, had "fumbled with the gear shift lever." *Id.* at 718, 374 P3d at 679. The Kansas Supreme Court, viewing the facts in the light most favorable to the state, upheld the conviction:

"[T]he State can point to the following facts: the vehicle's engine was running, *i.e.*, the vehicle was ready to move upon the engagement of the transmission; [the defendant] had previously moved into the driver's seat, *i.e.*, she had intentionally placed herself in a position to manipulate the

controls necessary to move the vehicle and may have been the one to start the engine; and, upon being awakened, [the defendant] reached down and fumbled with the gear shift lever, *i.e.*, she made an overt act toward engaging the transmission, which was arguably the last act needed to legally 'drive' the vehicle."

*Id.* at 718-19, 374 P3d at 679. And, in a somewhat broader application of "attempting to operate," the Kansas Court of Appeals upheld a conviction where the defendant tried, unsuccessfully, to start a vehicle with the key in the ignition, while intending to move the car. *State v. Adame*, 45 Kan App 2d 1124, 1129, 257 P3d 1266, 1270 (2011).

We therefore consider whether that additional breadth disqualifies Kan Stat Ann § 8-1567(a) from being considered a statutory counterpart to ORS 813.010. Weighing the two factors discussed above, we agree with defendant that Kan Stat Ann § 8-1567(a) is not a statutory counterpart to ORS 813.010.

The first factor that we consider is the degree to which the scope of Kan Stat Ann § 8-1567(a) diverges from ORS 813.010. Kan Stat Ann § 8-1567(a) extends to a variety of factual circumstances where an individual does not move a vehicle at all, including situations where a car's engine has not been turned on, as in *Adame*. That difference in scope is not on the scale that we found disqualifying in *Carlton*, but the first factor nevertheless weighs against concluding that the elements of Kan Stat Ann § 8-1567(a) are nearly the same as ORS 813.010(1).

We turn to the second factor, whether the additional conduct included in Kan Stat Ann § 8-1567(a) is treated as similarly culpable under Oregon law. Most, and possibly all, of the "attempt" conduct included in Kan Stat Ann § 8-1567(a) is likely criminalized in Oregon as attempted DUII. *See* ORS 161.405(1) ("A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime."). But in Oregon, an attempt is not treated as equally culpable as the completed offense, *see* ORS 161.405(2) (classifying attempts as one grade lower than the completed offense), and ORS 813.011 does not make

a prior conviction for *attempted* DUII a basis for elevating a DUII conviction to a felony. Because the additional breadth of the driving element of Kan Stat Ann § 8-1567(a) covers exclusively, or nearly exclusively, conduct that is criminal in Oregon, but that Oregon law does not deem equally culpable, the second factor weighs, albeit only weakly, against treating Kan Stat Ann § 8-1567(a) as a statutory counterpart to ORS 813.010.

This is a close case, but considering the two factors together, we conclude that the inclusion of "attempting to operate" precludes Kan Stat Ann § 8-1567(a) from being considered a statutory counterpart to ORS 813.010(1). The trial court erred in holding that Kan Stat Ann § 8-1567(a) was a statutory counterpart to ORS 813.010 and therefore erred in denying Guzman's motion to exclude that conviction. Guzman asks this court to reverse his conviction for felony DUII and to remand his case to the trial court for entry of a conviction for misdemeanor DUII and for resentencing. Because Guzman has agreed to that disposition, and because the state has not requested an alternative disposition, we conclude that Guzman's requested disposition is appropriate in this case.

## B.  Heckler *and Colo Rev Stat § 42-4-1301(1)(b)*

We now turn to defendant Heckler's convictions for violation of Colo Rev Stat § 42-4-1301(1)(b) in 2006 and 2010. In both years, the pertinent text was substantially the same, so we quote only the text of the 2010 statute:

"(1)(a)  It is a misdemeanor for any person who is under the influence of alcohol or one or more drugs, or a combination of both alcohol and one or more drugs, to drive a motor vehicle or vehicle.

"(b)  It is a misdemeanor for any person who is impaired by alcohol or by one or more drugs, or by a combination of alcohol and one or more drugs, to drive a motor vehicle or vehicle.

"* * * * *

"(f)  'Driving under the influence' means driving a motor vehicle or vehicle when a person has consumed alcohol or

one or more drugs, or a combination of alcohol and one or more drugs, that affects the person to a degree that the person is substantially incapable, either mentally or physically, or both mentally and physically, to exercise clear judgment, sufficient physical control, or due care in the safe operation of a vehicle.

"(g) 'Driving while ability impaired' means driving a motor vehicle or vehicle when a person has consumed alcohol or one or more drugs, or a combination of both alcohol and one or more drugs, that affects the person to the slightest degree so that the person is less able than the person ordinarily would have been, either mentally or physically, or both mentally and physically, to exercise clear judgment, sufficient physical control, or due care in the safe operation of a vehicle."

Colo Rev Stat § 42-4-1301 (2010).

Driving while ability impaired (DWAI), defined by Colo Rev Stat § 42-4-1301(1)(b), is a separate offense from the crime defined by Colo Rev Stat § 42-4-1301(1)(a). *See* Colo Rev Stat § 42-4-1307(3)-(4) (defining different penalties for the two offenses); *Byrd v. Stavely*, 113 P3d 1273, 1278 (Colo App 2005) (recognizing that DWAI is a separate offense with lesser penalties). There is no dispute that both of Heckler's convictions were for DWAI.

Heckler's argument that DWAI is not a statutory counterpart to ORS 813.010 focuses on a single element: impairment. For that reason, we address only that element and do not discuss other possible differences between the elements of ORS 813.010 and Colorado DWAI. The state responds to that argument by contending that DWAI has a very similar impairment element to ORS 813.010 and is, for that reason, a statutory counterpart.

Under Colorado law, the impairment element is satisfied when a person is

"affect[ed] *** to the slightest degree so that the person is less able than the person ordinarily would have been, either mentally or physically, or both mentally and physically, to exercise clear judgment, sufficient physical control, or due care in the safe operation of a vehicle."

Colo Rev Stat § 42-4-1301(1)(g) (2010).[11] By contrast, the impairment element of ORS 813.010(1) can be proved either by a blood alcohol content (BAC) level of .08 percent or by showing "that the driver was impaired to a perceptible degree while driving." *State v. Mazzola*, 356 Or 804, 813, 345 P3d 424 (2015). The "perceptible degree" standard has been part of our law for close to a century. *See State v. Noble*, 119 Or 674, 678, 250 P 833 (1926); *State v. Robinson*, 235 Or 524, 531, 385 P2d 754 (1963).

The state argues that there is little difference between DWAI and DUII under ORS 813.010. We disagree. Colorado's DWAI law criminalizes driving even while imperceptibly intoxicated, provided that the individual's mental or physical abilities relating to driving are affected "to the slightest degree." Colo Rev Stat § 42-4-1301(1)(g) (2010). That conduct falls below the "perceptible degree" of intoxication threshold set by ORS 813.010(1). To be sure, imperceptible intoxication can also violate ORS 813.010(1)(a), but only when the person's BAC at the time of driving was 0.08 or higher. DWAI, under Colorado law, criminalizes lower levels of imperceptible intoxication because it extends to even the "slightest degree" of impairment.[12]

Guided by the two factors discussed above, we conclude that the degree to which Colorado's DWAI offense includes conduct not captured by ORS 813.010 is sufficiently

---

[11] Colorado courts have not offered an exegesis of Colo Rev Stat § 42-4-1301 (1)(b), although it is clear that "DWAI has a lower proof threshold than DUI[.]" *People v. Grassi*, 364 P3d 1144, 1148 (Colo App 2011), *aff'd*, 320 P3d 332 (Colo 2014). But Colorado courts treat statutory text as the most important consideration when interpreting a law. *See People v. Cross*, 127 P3d 71, 73 (Colo 2006) ("We look first to the plain text of a statute, reject interpretations that render words or phrases superfluous, and harmonize potentially conflicting provisions, if possible."). The plain text of Colo Rev Stat § 42-4-1301(1)(g) is sufficient to establish the scope of DWAI under Colorado law.

[12] It could be argued that there is little practical difference between the two statutes because DWAI convictions are likely to occur only when the intoxication *is* perceptible. That argument is unpersuasive for two reasons. First, what matters is the scope of the elements and their differences as a legal matter, not the reality of how enforcement plays out in Colorado (much less our uninformed guess at it). In addition, evidence from observation is hardly the only way to prove impairment. To that end, Colorado law specifically provides for DWAI to be proven by breath or blood tests by creating a presumption that an individual is ability impaired when his or her BAC is between .05 and .08 percent. Colo Rev Stat § 42-4-1301(6)(a)(II).

significant to prevent it from qualifying as a statutory counterpart. Colo Rev Stat § 42-4-1301(1)(b) extends to drivers who are slightly and imperceptibly impaired, a class of persons that could be significant in size. The first factor therefore weighs against concluding that it is a statutory counterpart to ORS 813.010. Turning to the second factor, none of that additional conduct is criminal in Oregon. Under Oregon law, the "perceptible degree" standard draws a line between slight impairment that does not violate the law and the more significant impairment that does. Therefore, the second factor also weighs against treating Colo Rev Stat § 42-4-1301(1)(b) as a statutory counterpart to ORS 813.010.

While we do not hold that every foreign offense setting a lower bar for intoxication than ORS 813.010(1) is disqualified from being considered a statutory counterpart, we hold that the Colorado DWAI statute sets the bar low enough that its elements are not a close match. Like the California statute considered in *Carlton*, Colo Rev Stat § 42-4-1301 (1)(b) criminalizes conduct that is legal in Oregon in ways that are sufficiently significant that we cannot consider it a statutory counterpart. Accordingly, the trial court erred in denying Heckler's motion to exclude his prior convictions. He is entitled, as he requests, to have the case remanded to the trial court so that he may withdraw his conditional plea. *See* ORS 135.335(3) ("A defendant who finally prevails on appeal may withdraw the plea.").

## IV.   CONCLUSION

We hold that, in determining which foreign offenses qualify as statutory counterparts to ORS 813.010, the appropriate inquiry is close element matching. We conclude that Guzman's prior Kansas conviction and Heckler's two prior Colorado convictions were for offenses with elements that are not "the same as or nearly the same," *Carlton*, 361 Or at 43, as those of ORS 813.010(1). Defendants' prior foreign convictions are, for that reason, not convictions under statutory counterparts to ORS 813.010.

In *State v. Guzman*, S066328, the decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit

court for further proceedings. In *State v. Heckler*, S066373, the decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.