Submitted August 23, 2022, remanded for entry of a corrected judgment omitting provision prohibiting defendant from possessing firearms or ammunition pursuant to ORS 166.255 and ORS 166.250, otherwise affirmed June 14, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RICHARD DARREL EGGERS,
*Defendant-Appellant.*

Lane County Circuit Court
20CR55734; A175078

532 P3d 518

Defendant appeals from a judgment of conviction for one count of harassment "constituting domestic violence," ORS 166.065(3), assigning error to the trial court's imposition at sentencing of a prohibition against "possessing firearms or ammunition pursuant to ORS 166.255 and 166.250." Defendant contends that harassment is not a conviction that triggers the firearm prohibition in ORS 166.255 because it is not a "qualifying misdemeanor" or "a misdemeanor that has, as an element of the offense, the use or attempted use of physical force or the threatened use of a deadly weapon." ORS 166.255(1)(b), (3)(e). *Held*: The Court of Appeals concluded that the distinction between physical "force" and offensive physical "contact" was clear from the plain meaning of those words, as well as case law construing those words in other criminal contexts. Additionally, although the legislature borrowed language from federal law in enacting ORS 166.255, it did not do so in a way that made federal law controls over the text and context of ORS 166.255 itself. Because neither of the elements of the crime of harassment as charged necessarily involved the "use or attempted use of physical force," harassment was not a "qualifying misdemeanor," and the trial court erred in applying the firearm prohibition in ORS 166.255 at defendant's sentencing for the crime of harassment.

Remanded for entry of a corrected judgment omitting provision prohibiting defendant from possessing firearms or ammunition pursuant to ORS 166.255 and ORS 166.250; otherwise affirmed.

Charles D. Carlson, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Mark Kimbrell, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Colm Moore, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Remanded for entry of a corrected judgment omitting provision prohibiting defendant from possessing firearms or ammunition pursuant to ORS 166.255 and ORS 166.250; otherwise affirmed.

**SHORR, P. J.**

Defendant appeals from a judgment of conviction for one count of harassment "constituting domestic violence," ORS 166.065(3), assigning error to the trial court's imposition at sentencing of a prohibition against "possessing firearms or ammunition pursuant to ORS 166.255 and 166.250."[1] Defendant contends that the Class B misdemeanor of harassment is not a conviction that triggers the firearm prohibition in ORS 166.255 because it is not a "qualifying misdemeanor" or "a misdemeanor that has, as an element of the offense, the use or attempted use of physical force or the threatened use of a deadly weapon." ORS 166.255(1)(b), (3)(e). We agree and therefore reverse that aspect of defendant's sentence.[2]

The relevant facts at issue in this case are purely procedural. In October of 2020, defendant was charged by information with one count of fourth-degree assault constituting domestic violence after an incident with his brother. The following month, the state filed an amended information that reduced the charge to harassment constituting domestic violence, alleging that defendant "did unlawfully and intentionally harass and annoy [his brother] by subjecting [his brother] to offensive physical contact" and further alleging "that the foregoing crime constituted domestic violence." Defendant subsequently pleaded guilty to the offense, and the parties jointly recommended a sentence of "36 months of court probation with credit for time served considered served for jail days, no contact with the named victim, and no weapons."

Following the entry of the plea and a recitation of the factual basis for the conviction, the trial court asked the parties to state their positions "with regard to the application of [ORS] 166.255," the firearm prohibition statute, opining that harassment was a "specified provision." Defendant

___

[1] Defendant does not challenge the special condition of his probation that provides that he is not to "own, possess or have access to weapons." Our decision is limited to defendant's argument regarding the imposition of the restriction entered "pursuant to ORS 166.255 and 166.250."

[2] Defendant also raised a second assignment of error that he subsequently withdrew and that we do not consider.

argued that the prohibition did not apply and the state contended that it did apply. Defense counsel specifically argued that the "statute requires the Court to find that [defendant] represents a credible threat to the physical safety of a family or household member," and stated:

> "I don't believe that that applies in this case at all.
>
> "There * * * are hundreds of miles separating these parties now. This is a very low-level misdemeanor. We resolved it this way because from my perspective, I believe the State would have proof issues on an Assault at trial, and I think that it's disproportionate punishment to revoke [defendant's] gun rights based on this class B misdemeanor."

The prosecutor, in turn, argued that

> "the statute applies. He—his brother—regardless of how close they are, is a family member, and it seems that this is domestic violence. It certainly is a family member.
>
> "This is a qualifying misdemeanor, it includes the use or attempted use of physical force that despite the disputes of fact, this is offensive physical contact which I think qualifies as physical force."

Following those arguments, the court stated its ruling:

> "[Defense counsel], I hear what you're saying, and maybe this will be the appeal which will correct this, but I think on its face the firearm provision does apply.
>
> "So, Sir, pursuant to ORS 166.255, as a result of this conviction, you are no longer allowed to knowingly possess firearms or ammunition."

The court subsequently entered a judgment consistent with that ruling, and this timely appeal followed. As explained above, defendant assigns error to the trial court's imposition of the firearm prohibition in ORS 166.255, contending that the crime of harassment is not a "qualifying misdemeanor" that "has, as an element of the offense, the use or attempted use of physical force or the threatened use of a deadly weapon." ORS 166.255(1)(b), (3)(e).

We first address the state's contention that defendant's argument is unpreserved. Specifically, the state

contends that defendant's trial argument against the imposition of the firearm prohibition referenced ORS 166.255 (1)(a), which makes it unlawful for a person to knowingly possess a firearm if the person is the subject of an order that "[r]estrains the person from stalking, intimidating, molesting or menacing a family or household member of the person" and "[i]ncludes a finding that the person represents a credible threat to the physical safety" of that person. The state notes that defendant was not subject to a restraining order and did not raise any argument in the trial court that relied on ORS 166.255(1)(b).

> "Although the preservation requirement is not something that can be explained by a neat verbal formula, the essential goal is straightforward: A party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately."

*State v. Vanornum*, 354 Or 614, 632, 317 P3d 889 (2013) (internal quotation marks, citations, and brackets omitted). That requirement is intended to "ensure that trial courts have an opportunity to understand and correct their own possible errors and that the parties are not taken by surprise, misled, or denied opportunities to meet an argument." *Id.* (internal quotation marks omitted). The Supreme Court has counseled "attention to the purposes of the rule and the practicalities it serves." *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011). As it explained in *State v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009), "[u]ltimately, the preservation rule is a practical one, and close calls *** inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served."

Here, we conclude that the purposes of preservation were met. First, defendant's objection to the imposition of ORS 166.255 was specific and clear enough to provide the trial court with an opportunity to identify, understand, and consider the issue defendant now presses. In alerting the court and the state that he objected to the imposition of the firearm prohibition in ORS 166.255, defendant sufficiently raised the issue of the applicability of the firearm prohibition

under ORS 166.255 even if he did not explicitly address the specific subparagraph now at issue on appeal. "The fact that the level of detail or thoroughness with which a party articulates a position may leave something to be desired does not mean that it was insufficient to serve the rule of preservation's pragmatic purposes." *Walker*, 350 Or at 550.

More significantly, after defense counsel argued that the firearm prohibition did not apply and offered her "credible threat" argument, the prosecutor raised the very argument at issue on appeal, contending that defendant was subject to the firearm prohibition because harassment is a "qualifying misdemeanor." The trial court then ruled that "on its face the firearm provision does apply * * * *as a result of this conviction*." (Emphasis added.) That sequence of events is important for two reasons. First, it illuminates that the trial court implicitly accepted the state's argument that harassment was a "qualifying misdemeanor" that "has, as an element of the offense, the use or attempted use of physical force or the threatened use of a deadly weapon," therefore establishing that the trial court had an opportunity to consider the argument defendant now makes on appeal. ORS 166.255(1)(b), (3)(e). Second, it makes clear that the state both understood defendant's contention and in fact responded to it. In other words, the state was not denied the opportunity to meet defendant's argument against the imposition of the prohibition, nor should it be surprised by defendant's appellate argument now. *See Parkins*, 346 Or at 341 (concluding that issue was adequately preserved where it was raised by the state and ruled on by the trial court, even though the defendant only addressed it "ambivalently"). For those reasons, we conclude that defendant's appellate argument was adequately preserved.

We turn to the merits of defendant's appeal: the contention that the trial court erred in imposing the firearm prohibition in ORS 166.255 upon defendant's conviction for harassment because harassment is not a "qualifying misdemeanor" that "has, as an element of the offense, the use or attempted use of physical force." ORS 166.255(1)(b), (3)(e). We review a defendant's sentence as well as questions of statutory interpretation for legal error. *State v. Nobles*, 306 Or App 1, 2, 473 P3d 1108 (2020); *State v. Heaston*, 308

Or App 694, 697, 482 P3d 167 (2021). Because defendant's assignment of error turns on the definitions of "qualifying misdemeanor" and "physical force" under ORS 166.255(1) and (3), we turn to the familiar methodology for determining the legislature's intent outlined in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), considering the text and context of the statute as well as any legislative history that we find helpful.

We begin with the relevant text of ORS 166.255:

"(1)  It is unlawful for a person to knowingly possess a firearm or ammunition if:

"*****

"(b)  The person has been convicted of a qualifying misdemeanor and, at the time of the offense, the person was:

"(A)  A family or household member of the victim of the offense[.]

"*****

"(3)  As used in this section:

"*****

"(e)  'Qualifying misdemeanor' means *a misdemeanor that has, as an element of the offense, the use or attempted use of physical force* or the threatened use of a deadly weapon."

(Emphasis added.) Thus, for harassment to constitute a "qualifying misdemeanor" under the circumstances at issue here, it must have, "as an element of the offense, the use or attempted use of physical force." As charged here, a person commits the crime of harassment under ORS 166.065 if the person intentionally "[h]arasses or annoys another person" by "[s]ubjecting such other person to offensive physical contact." ORS 166.065(1)(a)(A). Thus, the elements of the crime of harassment as charged in this case are (1) that the defendant subjects another person to offensive physical contact, and (2) that the defendant intentionally harasses or annoys that person.[3]

---

[3] The parties appear to agree that, in analyzing whether defendant was convicted of a "qualifying misdemeanor," we consider solely the statutory

The question, then, is whether the element of "offensive physical contact" within ORS 166.065(1)(a)(A) constitutes "the use or attempted use of physical force." We conclude that it does not. Although those terms are not defined in ORS chapter 166, the distinction between physical "force" and offensive physical "contact" is clear from the plain meaning of those words, as well as our case law construing those words in other criminal contexts. "Force" is defined as

> "1 a : strength or energy esp. of an exceptional degree : active power : VIGOR *** c : power to affect in physical relations or conditions <the ~ of the blow was somewhat spent when it reached him> <the rising ~ of the wind> *** 3 a : power, violence, compulsion, or constraint exerted upon or against a person or thing *** b : strength or power of any degree that is exercised without justification or contrary to law upon a person or thing c : violence or such threat or display of physical aggression toward a person as reasonably inspires fear of pain, bodily harm, or death[.]"

*Webster's Third New Int'l Dictionary* 887 (unabridged ed 2002) (emphasis added). "Contact," on the other hand, is defined as "union or junction of body surfaces : a touching or meeting <cooled by ~ with the air> <sexual ~> : IMPACT <body ~ in football and hockey>." *Webster's* at 490. Thus, while "use of physical force" denotes the conduct of using physical strength or power, "offensive physical contact" refers to the result of an offensive physical touching.

Of course, some kinds of "offensive physical contact" may result from "the use of physical force." As our cases construing the harassment statute have made clear, examples of "offensive physical contact" may include "striking, slapping, shoving, kicking, grabbing, and similar acts that are an interference with the 'contactee.'" *State v. Sallinger*, 11 Or App 592, 598, 504 P2d 1383 (1972); *see also State v. Keller*, 40 Or App 143, 145-46, 594 P2d 1250 (1979) (explaining that

elements underlying defendant's conviction. In other words, they agree that we do not examine the particular factual predicates for the crime. We agree. ORS 166.255(3)(e) defines a "[q]ualifying misdemeanor" as one that has certain conduct "as an element of the offense." A qualifying misdemeanor is therefore not defined by the particular factual conduct that was charged or that led to the conviction.

"our statement of illustrations—striking, slapping, etc." in *Sallinger*—"was not intended to be a comprehensive enumeration of the acts prohibited by the statute" and that "ORS 166.065(1)(a) was intended to prohibit all forms of contact that are comparable with, the equivalent of or substantially similar to, striking, slapping, etc. in respect to interference with the integrity of the victim"). But that does not mean that "offensive physical contact" is equivalent to "the use or attempted use of physical force." As to ORS 166.065, the state need only prove that the defendant caused the result of "offensive physical contact" with the requisite mental state; there is no requirement that the state prove that the defendant used or attempted to use physical force. *Cf. Keller*, 40 Or App at 146 (concluding that spitting on another may constitute "offensive physical contact" sufficient to prove harassment under ORS 166.065).

Case law construing "physical force" and similar terms in other criminal contexts is consistent with that view. For instance, we have construed the phrase "violent, tumultuous or threatening behavior" within the second-degree disorderly conduct statute, ORS 166.025(1)(a), which prior case law had construed to mean "the use of physical force or physical conduct which is immediately likely to produce the use of such force." *State v. Atwood*, 195 Or App 490, 492, 98 P3d 751 (2004) (citing *State v. Cantwell*, 66 Or App 848, 676 P2d 353, *rev den*, 297 Or 124 (1984)). We concluded that "actual but incidental physical contact" such as "grabbing hold of someone's shoulder" to get their attention did not rise to the level of "use of physical force" required under the statute, concluding that use of physical force "connotes the actual use of strength or power." *Atwood*, 195 Or App at 498. Similarly, in *State v. Marshall*, 350 Or 208, 217-18, 253 P3d 1017 (2011), the Supreme Court interpreted the term "forcible compulsion" in the statute for first-degree sexual abuse, ORS 163.427(1)(a)(B), which ORS 163.305 (1)(a) defines in part as "to compel by *** [p]hysical force." The court concluded that "the level of force that is involved must be greater than or qualitatively different from the simple movement and contact that is inherent in the action of touching an intimate part of another." *Marshall*, 350 Or at 221.

Although those cases considered different criminal statutes and phrases, they illuminate that when the legislature uses the term "physical force" in the criminal code, it intends something that is distinguishable from the incidental physical touching that may constitute "physical contact." "Although, in the abstract, there is nothing that precludes the legislature from defining the same terms to mean different things in the same or related statutes, in the absence of evidence to the contrary, we ordinarily assume that the legislature uses terms in related statutes consistently." *State v. Cloutier*, 351 Or 68, 99, 261 P3d 1234 (2011).

Despite that text and context, the state contends that "offensive physical contact" is an element that constitutes "the use *** of physical force." First, the state points to the dictionary definitions of "force," ranging from a "violen[t]" or "exceptional" strength to "strength or power *of any degree* that is exercised without justification or contrary to law upon a person or thing," *see Webster's* at 887 (emphasis added), contending that "physical force" does not require any particular quality or degree and that the dictionary definitions are thus "not particularly helpful in resolving what kind of force satisfies the requirement in ORS 166.255(3)(e)." The state also contends that cases like *Marshall* and *Atwood* are inapposite to our analysis of ORS 166.255 because they considered other statutory provisions. We are not persuaded by those arguments. The state is indeed correct that one of the dictionary definitions of "force" does not connote any particular degree of strength. But cases like *Marshall* and *Atwood* are relevant context for interpreting ORS 166.255, in light of the fact that they addressed the same phrase within the same body of law, and those cases are consistent with the vast majority of the dictionary definitions of "force" in concluding that the use of "physical force" denotes a degree of strength that is greater than a mere incidental touching. *See Webster's* at 887 (providing other definitions of "force" as "strength or energy *esp. of an exceptional degree*," "power, violence, compulsion, or constraint exerted upon or against a person or thing," and "violence or such threat or display of physical aggression toward a person as reasonably inspires fear of pain, bodily harm, or death" (emphasis added)).

Finally, the state places significant weight on its interpretation of the legislative history of ORS 166.255. In the state's view, ORS 166.255 was intended to "mirror" the federal firearms prohibition for domestic abusers contained in the Violence Against Women Act (VAWA), specifically 18 USC section 922(g)(9). Because the federal provisions applied to "offensive touching" at the time the Oregon legislature enacted ORS 166.255, the state contends that the legislature intended Oregon's prohibition to apply to a conviction for harassment involving offensive physical contact committed against a family member.

To explain our consideration of that argument, we briefly recount the legislative history of ORS 166.255. The statute was introduced as Senate Bill (SB) 525 (2015) to "codify the federal law in Oregon to ensure protection for [domestic violence] victims." Testimony, Senate Committee on Judiciary, SB 525, Mar 25, 2015, Ex 4 (statement of co-sponsor Sen Laurie Monnes Anderson). As introduced, the bill hewed to the federal language in applying the firearm prohibition to, in part, persons convicted of "qualifying misdemeanor crime[s] involving domestic violence." SB 525, introduced (Feb 2, 2015). That original version also explicitly defined "qualifying misdemeanor crime involving domestic violence" to include several specific crimes as well as "[a]ny other misdemeanor that involves as an element of the crime the use of physical force or a deadly weapon." *Id*.

Proponents of the bill described that it would "implement federal law." Testimony, Senate Committee on Judiciary, SB 525, Mar 25, 2015, Ex 15 (statement of Portland Commissioner Dan Saltzman); *see also, e.g.*, Testimony, House Committee on Judiciary, SB 525, June 1, 2015, Ex 2 (statement of co-sponsor Sen Laurie Monnes Anderson) (stating that bill "mirrors the federal law"). However, other proponents acknowledged differences between SB 525 and VAWA. *See* Testimony, Senate Committee on Judiciary, SB 525, Mar 25, 2015, Ex 5-6 (statement of Sybil Hebb, Oregon Law Center) (calling SB 525 "similar" to VAWA and acknowledging differences between SB 525 and VAWA); Testimony, Senate Committee on Rules, SB 525, May 12, 2015, Ex 4 (statement of Sybil Hebb) (describing bill as "modeled after" the federal prohibitions in VAWA).

Later amendments to the bill changed the firearm prohibition so that it no longer applied to persons convicted of qualifying "misdemeanor crime[s] of domestic violence"— the language borrowed from VAWA—but instead applied to persons "convicted of a qualifying misdemeanor and, at the time of the offense, the person was a family member of the victim of the offense." SB 525, -A4 amendments (May 1, 2015). The amendments also defined "qualifying misdemeanor" as "a misdemeanor that has, as an element of the offense, the use or attempted use of physical force or the threatened use of a deadly weapon," removing the specified crimes that had been previously listed. *Id.* The bill was later enacted with those amendments. Or Laws 2015, ch 497, § 2.

About a year before the Oregon legislature passed SB 525, the United States Supreme Court decided *United States v. Castleman*, 572 US 157, 134 S Ct 1405, 188 L Ed 2d 426 (2014). In that case, the court considered whether a state criminal statute prohibiting "intentionally or knowingly caus[ing] bodily injury" to an intimate partner could result in a conviction for a "misdemeanor crime of domestic violence" under 18 USC section 922(g)(9), defined in part as an offense that "has, as an element, the use or attempted use of physical force" under 18 USC section 921(a)(33)(A)(ii). *Castleman*, 572 US at 161. The court concluded that Congress had intended to incorporate the "well-settled" common-law meaning of "force" when enacting 18 USC section 921(a)(33)(A)(ii). *Id.* at 162-63. At common law, the element of "force" was "satisfied by even the slightest offensive touching." *Id.*

In the state's view, the Oregon legislature made clear that it intended to "mirror" VAWA and necessarily adopted *Castleman*'s definition of "force." As a result, the state insists that we "must regard the [United States Supreme] Court's interpretation in *Castleman* as authoritative for purposes of ORS 166.255" and conclude that harassment satisfies the "use *** of physical force" element requirement.

We agree that the legislature borrowed heavily from VAWA in enacting ORS 166.255, especially in adopting its definition of a "qualifying misdemeanor" as a misdemeanor that has, "as an element of the offense, the use or attempted use of physical force or the threatened use of

a deadly weapon." *Compare* ORS 166.255(3)(e) *and* 18 USC § 921(a)(33)(A)(ii). It is also true that, when interpreting statutes with text borrowed from other jurisdictions, we "accord a special status to prior interpretations by the highest court of the relevant jurisdiction." *State v. Guzman/Heckler*, 366 Or 18, 29, 455 P3d 485 (2019). Indeed, "[i]f the Oregon legislature adopts a statute or rule from another jurisdiction's legislation, we assume that the Oregon legislature also intended to adopt the construction of the legislation that the highest court of the other jurisdiction had rendered before adoption of the legislation in Oregon." *Id.* (internal quotation marks omitted).

However, the text and context of ORS 166.255 make clear that, although the legislature copied many elements from VAWA, it did not enact an identical copy of it such that we must adopt *Castleman*'s analysis and interpret "offensive physical contact" as equivalent to the use of "physical force." ORS 166.255 and 18 USC section 922(g) differ in important ways. Most obviously, section 922(g)(9) applies to those convicted "of a misdemeanor crime of domestic violence," whereas ORS 166.255 applies to those convicted of a "qualifying misdemeanor" committed against a family or household member. ORS 166.255 does not use the term "domestic violence," which has a specific meaning under ORS 135.230. *Compare* ORS 135.230(1) - (4) (defining "[d]omestic violence" as "abuse" or "[a]ttempting to cause or intentionally, knowingly or recklessly causing physical injury; *** [i]ntentionally, knowingly or recklessly placing another in fear of imminent serious physical injury; or *** [c]ommitting sexual abuse in any degree" between "family or household members") *with* 18 USC § 921(a)(33)(A) (defining "misdemeanor crime of domestic violence" as a misdemeanor that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by" certain persons). Indeed, harassment is not a "crime of domestic violence" under Oregon law because it does not constitute "abuse." ORS 135.230(1); *State v. Johnson*, 317 Or App 134, 135, 503 P3d 1269, *rev den*, 369 Or 676 (2022) (accepting state concession that trial court erred by entering judgment that included "constituting domestic violence" as part of harassment conviction in part because "harassment is not a

domestic violence crime as defined by ORS 135.230"). ORS 166.255 also differs from VAWA in how it deals with expungements, among other things. *Compare* ORS 166.255(3)(a)(C) *with* 18 USC § 921(a)(33)(B)(ii). In addition to those statutory differences, *Castleman* followed a statutory analysis that differed considerably from our method of statutory interpretation, relying almost exclusively on the common law rather than the plain meaning of the text. *See Castleman*, 572 US at 179-80 (Scalia, J., concurring) (opining that, in adopting a "nonviolent definition" of "domestic violence," the majority had ignored the plain meaning of those words). We further note that the legislative history does not reveal that the legislature ever discussed *Castleman* at the time of the enactment of ORS 166.255.

Thus, although the legislature borrowed language from federal law in enacting ORS 166.255, it did not do so in a way that would lead us to conclude that federal law controls over the text and context of ORS 166.255 itself. Where the legislature has closely aligned a state statute with federal law, the later may indeed be particularly persuasive evidence of the legislature's intention. But where "the text of the statute departs from" federal law, as is the case here, federal law is "significantly less persuasive when it comes to the meaning and scope of words and phrases * * * that are not part of the federal formulation." *Penn v. Board of Parole*, 365 Or 607, 618-19, 451 P3d 589 (2019). In those circumstances, we decide what the state law ultimately means, "in accordance with our usual interpretive paradigm, without following in lockstep the federal cases analyzing and applying" the federal law. *Id.* at 619. "Under our interpretive paradigm, the words that the legislature used in the enactment are the best evidence of the legislature's intention." *Id.* at 619-20. At bottom, Oregon law applies the firearm prohibition in ORS 166.255(1)(b) only to those persons convicted of a "qualifying misdemeanor," or misdemeanor that, as relevant here, has "the use * * * of physical force" as "an element of the offense." Considering both the plain meaning of "physical force" and how Oregon has interpreted "physical force" in other criminal contexts, "offensive physical contact" is not an element that is equivalent to "the use * * * of physical force."

In summary, ORS 166.255 applies a firearm prohibition to certain persons convicted of "qualifying misdemeanor[s]," which include misdemeanors that have, "as an element of the offense, the use or attempted use of physical force." The elements of the crime of harassment, as charged in this case, are that the defendant intentionally harasses or annoys another person by subjecting that person to offensive physical contact. ORS 166.065(1)(a). Because neither of those elements necessarily involve the "use or attempted use of physical force," harassment is not a "qualifying misdemeanor," and the trial court erred in applying the firearm prohibition in ORS 166.255 at defendant's sentencing for the crime of harassment.

Remanded for entry of a corrected judgment omitting provision prohibiting defendant from possessing firearms or ammunition pursuant to ORS 166.255 and ORS 166.250; otherwise affirmed.