No. 35          October 24, 2024          789

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

RICHARD DARREL EGGERS,
*Respondent on Review.*

(CC 20CR55734) (CA A175078) (SC S070458)

En Banc

On review from the Court of Appeals.*

Argued and submitted May 9, 2024.

Colm Moore, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Sara F. Werboff, Deputy Public Defender, Office of Public Defense Commission, Salem, argued the cause and filed the briefs for respondent on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

JAMES, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

_____
* Appeal from Lane County Circuit Court, Charles D. Carlson, Judge. 326 Or App 337, 532 P3d 518 (2023).

**JAMES, J.**

ORS 166.255 provides, in part, that "it is unlawful for a person to knowingly possess a firearm or ammunition if * * * [t]he person has been convicted of a qualifying misdemeanor and, at the time of the offense, the person was * * * [a] family or household member of the victim of the offense." For purposes of that prohibition, a "qualifying misdemeanor" is one that "has, as an element of the offense, the use or attempted use of physical force." ORS 166.255(3)(e).

The misdemeanor crime of harassment—set out at ORS 166.065—provides that one, among many, ways a person can commit the crime is "if the person intentionally * * * [h]arasses or annoys another person by * * * [s]ubjecting such other person to offensive physical contact." ORS 166.065 (1)(a)(A). At issue in this case is whether the "offensive physical contact" element of harassment constitutes "physical force" for purposes of ORS 166.255(3)(e). The trial court concluded that it did, and, accordingly, imposed the firearms prohibition based on defendant's harassment conviction. The Court of Appeals disagreed, concluding that harassment was not a "qualifying misdemeanor" under ORS 166.255 because "offensive physical contact" did not necessarily constitute "physical force" for the purposes of ORS 166.255(3)(e). *State v. Eggers*, 326 Or App 337, 344, 532 P3d 518 (2023).

This court allowed review. The issue before us is solely one of statutory construction—no party has raised a constitutional challenge. As we will explain, we conclude that the Oregon legislature patterned the "physical force" requirement of ORS 166.255(3)(e) off federal law, which the United States Supreme Court had previously construed to cover the degree of force necessary to complete a common-law battery. Because "offensive physical contact" falls within that meaning, we conclude that harassment is a "qualifying misdemeanor" under ORS 166.255. Accordingly, we reverse the decision of the Court of Appeals and affirm the judgment of the trial court.

## I. BACKGROUND

The facts are undisputed and procedural in nature. The state initially charged defendant by information with

fourth-degree assault constituting domestic violence, alleging that he unlawfully and knowingly caused physical injury to his brother. Subsequently, an amended information charged defendant with harassment under ORS 166.065 (1)(a)(A) based on the allegation that defendant "unlawfully and intentionally harass[ed] and annoy[ed] [his brother] by subjecting [him] to offensive physical contact."[1] The state further alleged that "the foregoing crime constituted domestic violence."[2] Defendant pleaded guilty, admitting that "there was *** a verbal altercation" between defendant and his brother that culminated in defendant reaching into his brother's van and "grab[bing]" him.

Following the entry of the plea, the trial court asked the parties to state their positions regarding whether the firearms prohibition in ORS 166.255 applied to defendant. ORS 166.255(1)(b) prohibits a person from knowingly possessing a firearm or ammunition, if, as relevant here, that person has been convicted of a "qualifying misdemeanor" and the victim of the offense was a "family or household member" of the convicted person. For purposes of that provision, a "qualifying misdemeanor," is defined as "a misdemeanor that has, as an element of the offense, the use or attempted use of physical force or the threatened use of a deadly weapon." ORS 166.255(3)(e).

The parties disputed the applicability of the firearms prohibition. Defendant asserted that the prohibition

---

[1] Although the charging instrument did not identify ORS 166.065(1)(A) as the explicit statutory authority for the harassment charge, both the state and defendant have maintained throughout this case that that provision provides the appropriate definition of harassment for defendant's conviction. We recognize that there are other ways that a person can commit the crime of harassment, and our resolution of this case does not speak to whether those other forms of harassment are "qualifying misdemeanors" for purposes of ORS 166.255.

[2] When a crime involves "domestic violence," the state may plead (and later prove) domestic violence as an element of the crime by adding "constituting domestic violence" to the title of the crime in the accusatory instrument. ORS 132.586(2). For purposes of ORS 132.586, "[d]omestic violence" is defined as "abuse between family or household members." ORS 132.586(1); ORS 135.230(3). "Abuse" means (1) "[a]ttempting to cause or intentionally, knowingly or recklessly causing physical injury[,]" (2) "[i]ntentionally, knowingly or recklessly placing another in fear of imminent serious physical injury[,]" or (3) "[c]ommitting sexual abuse in any degree as defined in ORS 163.415, 163.425 and 163.427." ORS 135.230(1).

did not apply because the trial court had not made a finding that defendant posed a threat to his brother:

> "[DEFENSE COUNSEL:] *** I believe that this statute requires the [c]ourt to find that this person represents a credible threat to the physical safety of a family or household member. I don't believe that that applies in this case at all.
>
> "There is—there are hundreds of miles separating these parties now. This is a very low-level misdemeanor. We resolved it this way because from my perspective, I believe the [s]tate would have proof issues on an [a]ssault [charge] at trial, and I think that it's disproportionate to revoke [defendant's] gun rights based on this class B misdemeanor."

In response, the state countered that no such finding was required because harassment was a qualifying misdemeanor:

> "[STATE:] *** I do believe the statute applies. He—his brother—regardless how close they are, is a family member, and it seems that this is domestic violence. It certainly is a family member.
>
> "This is a qualifying misdemeanor, it includes the use or attempted use of physical force that despite the disputes of fact, this is offensive physical contact which I think qualifies as physical force."

The trial court ultimately agreed with the state, concluding that the firearms prohibition applied "on its face." As a result, the trial court entered a judgment prohibiting defendant from knowingly possessing firearms or ammunition under ORS 166.255. The trial court separately entered an order—also pursuant to the firearms prohibition—requiring defendant to surrender his firearms and ammunition within 24 hours.

Defendant appealed and assigned error to the trial court's imposition of the firearm prohibition, contending that the crime of harassment, as defined by ORS 166.065 (1)(a)(A), was not a "qualifying misdemeanor" that "has, as an element of the offense, the use or attempted use of

physical force."[3] Defendant argued that the meaning of "contact," as used in the harassment statute, was distinct from that of "force," as contemplated by the firearm prohibition. To support that argument, defendant pointed to differences between the dictionary definitions of "contact" and "force," as well as appellate case law construing the two terms in other criminal statutes. Based on those distinctions, defendant argued that the term "physical force" intended to capture a "level or degree of contact that is greater than mere physical contact." Accordingly, defendant concluded that harassment was not a qualifying misdemeanor, because the "offensive physical contact" element did not satisfy the "physical force" requirement.

In response, the state asserted that harassment was a qualifying misdemeanor under ORS 166.255 because both the text and "the relevant context demonstrate[] that the legislature intended the 'physical force' requirement to be satisfied by the degree of force that supports a common-law battery claim—namely 'offensive touching.'"[4] First, the state argued that the dictionary definitions of "force" covered a broad range of conduct, including the "strength or power of *any degree* that is exercised without justification or contrary to law upon a person or thing." The state further argued that the legislative history behind ORS 166.255 indicated that the legislature intended to capture "offensive physical contact" within the meaning of "physical force." In the state's view, the context and legislative history indicated that the legislature had intended ORS 166.255 to "mirror" the federal firearms prohibition for domestic abuse contained in the Violence Against Women Act (VAWA)—which also applies to misdemeanors with an element of "use or attempted use of force." 18 USC § 921(a)(33)(A)(ii). In *United*

---

[3] Defendant also assigned error to a judgment imposing a $100 statutory fine, arguing that the trial court erred in imposing that fine based on the "erroneous legal conclusion that the fine was mandatory." He later withdrew that assignment of error, and accordingly, the Court of Appeals did not address that assignment. *Eggers*, 326 Or App at 339 n 2.

[4] The state had also argued that defendant's assignment of error was unpreserved, but the Court of Appeals rejected that argument. *Eggers*, 326 Or App at 341. On review in this court, the state has conceded that defendant's challenge was preserved and requests that we resolve the issue on the merits. We agree that defendant preserved the issue.

*States v. Castleman*, 572 US 157, 161, 134 S Ct 1405, 188 L Ed 2d 426 (2014), the United States Supreme Court concluded that Congress had intended the force requirement in VAWA to incorporate the "well-settled" common-law meaning of force and that the element of "force" was "satisfied by even the slightest offensive touching." Because the legislature intended ORS 166.255 to mirror the VAWA prohibition, the state argued that the Court of Appeals was required to apply the *Castleman* construction to the force requirement of ORS 166.255(3)(e).

The Court of Appeals ultimately agreed with defendant, concluding that the "offensive physical contact" element of harassment did not satisfy the requirement that a qualifying misdemeanor have, as an element, the use of "physical force." *Eggers*, 326 Or App at 344. The court explained that it reached that conclusion because "the distinction between physical 'force' and offensive physical 'contact' is clear from the plain meaning of those words, as well as [that court's] case law construing those words in other criminal contexts." *Id*. Based on those distinctions, the Court of Appeals concluded that "physical force" meant something more than "the 'incidental physical touching' that may constitute 'physical contact.'" *Id*. at 346.

In reaching that conclusion, the Court of Appeals rejected the state's argument that the legislature had intended to mirror the federal firearms prohibition in such a way as to require the court to adopt the *Castleman* construction of "force." The court noted several textual inconsistencies between VAWA and ORS 166.255—namely, that VAWA refers to the crimes that it covers as "misdemeanor crime[s] of domestic violence" while ORS 166.255 refers to those crimes as "qualifying misdemeanors." *See id*. at 349 ("Most obviously, section 922(g)(9) applies to those convicted 'of a misdemeanor crime of domestic violence,' whereas ORS 166.255 applies to those convicted of a 'qualifying misdemeanor' committed against a family or household member. ORS 166.255 does not use the term 'domestic violence,' which has a specific meaning under ORS 135.230.").[5] Although the

---

[5] In that same line of reasoning, the Court of Appeals went on to state that, "[i]ndeed[,] harassment is not a 'crime of domestic violence' under Oregon law because it does not constitute 'abuse.'" *Id*. at 349 (citing *State v. Johnson*,

Court of Appeals agreed with the state that the legislature "borrowed heavily from VAWA in enacting ORS 166.255," it concluded that "it did not enact an identical copy of it such that we must adopt *Castleman*'s analysis and interpret 'offensive physical contact' as equivalent to the use of 'physical force.'" *Id.* at 349.

The state then petitioned for review, which we allowed.

## II.   ANALYSIS

The issues presented are ones of statutory interpretation. Accordingly, we turn to the familiar analytical framework set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P3d 1143 (1993), and modified in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). Under that framework, we examine the text and context of ORS 166.255, together with legislative history to the extent that it aids our analysis, all with the "paramount goal" of determining the legislature's intent. *Gaines*, 346 Or at 171-72.

Before this court, defendant argues that it is implausible to conclude that the legislature intended the physical force requirement of ORS 166.255(3)(e) to cover the offensive physical contact element of harassment because both the text and context "unambiguously exclude[] the crime of harassment from the definition of a qualifying misdemeanor." Defendant asserts that the differences between the dictionary definitions of "physical force" and "physical contact" demonstrate that "physical force" entails the "actual use of strength or power, even if minimal," while "physical contact" does not. Defendant also points to distinctions

---

317 Or App 134, 135, 503 P3d 1269, *rev den*, 369 Or 676 (2022), in which the state had conceded that the trial court had erred by entering a judgment that included "constituting domestic violence" as part of the harassment conviction when the state had not pleaded the domestic violence element as authorized by ORS 132.586(2)). The state filed a petition for reconsideration, requesting that the Court of Appeals modify its opinion to "remove *dictum* that could appear to resolve, without the benefit of briefing, whether the state can ever plead and prove that harassment 'constitutes domestic violence'" under ORS 132.586(2). The Court of Appeals denied that request.

   Because we resolve this case on the grounds that harassment—by its statutory terms—is a "qualifying misdemeanor" for purposes of ORS 166.255, we leave open whether harassment is a "crime of domestic violence" for purposes of ORS 132.586(2).

between "physical force" and "offensive physical contact" in the Oregon Criminal Code as relevant context for interpreting ORS 166.255(3)(e). Because the Criminal Code, in defendant's view, otherwise distinguishes between "physical force" and "physical contact," defendant urges us to apply the "canon of consistent usage"—a principle of statutory construction that provides that, in the absence of evidence to the contrary, we ordinarily assume that the legislature uses terms in related statutes consistently—to reach the conclusion that "offensive physical contact" does not constitute "physical force" for purposes of ORS 166.255. *See State v. Guzman/Heckler*, 366 Or 18, 34, 455 P3d 485 (2019) (explaining and applying the canon of consistent usage to the DUII statute).

The state, on the other hand, asserts that the legislature intended for harassment to be a qualifying misdemeanor under ORS 166.255. The state disagrees with defendant's textual argument and, instead, posits that the plain meaning of "physical force" covers a wide range of conduct that can include any offensive touching. Because the dictionary definition of "force" does not compel the narrow construction adopted by defendant and the Court of Appeals, the state urges us to look at the context and legislative history to determine the meaning of "physical force" in ORS 166.255(3)(e). In the state's view, the context and legislative history show that the Oregon Legislative Assembly intended ORS 166.255 to mirror the VAWA firearms prohibition. The state thus urges us to apply the "borrowed-statute rule."[6] Under that interpretive principle, we presume that, when our legislature borrows statutory text from another jurisdiction, the legislature also intended to borrow controlling case law, from the highest court in the jurisdiction, in existence at that time, that interpreted that statutory text.

As we will explain, the text, context, and legislative history of ORS 166.255 lead us to conclude that the legislature intended the term "physical force" to be satisfied by the degree of force that that is akin to "offensive physical contact."

---

[6] Throughout this opinion we use the term "borrowed-statute rule" because that is the language used by the parties.

A.  *Text of ORS 166.255*

The best evidence of legislative intent is the words enacted into law by the legislature. *State v. Hubbell*, 371 Or 340, 349, 537 P3d 503 (2023). Accordingly, we begin with the text of ORS 166.255, which provides, in part:

"(1)  It is unlawful for a person to knowingly possess a firearm or ammunition if:

"* * * * *

"(b)  The person has been convicted of a qualifying misdemeanor[.]

"* * * * *

"(3)  As used in this section:

"* * * * *

"(e)  'Qualifying misdemeanor' means a misdemeanor that has, as an element of the offense, the use or attempted use of physical force[.]"

"Physical force" is not defined in the firearm prohibition statute, nor is it defined in ORS chapter 166. When the legislature has not defined a particular term, we generally "assume that the legislature intended to give words of common usage their 'plain, natural, and ordinary meaning.'" *State v Clemente-Perez*, 357 Or 745, 756, 359 P3d 232 (2015) (quoting *PGE*, 317 Or at 611); *see also Providence Health Sys. - Oregon v. Brown*, 372 Or 225, 231, 548 P3d 817 (2024) ("If the term is one of common usage, we generally presume that the legislature intended the ordinary meaning of the term, and we often consult contemporaneous dictionaries to determine that ordinary meaning."). We often turn to dictionaries as a starting point in our analysis because they provide a range of possible meanings that a given word could reasonably have. *See State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011) (stating that dictionaries "do not tell us what words mean, only what words *can* mean, depending on their context and the particular manner in which they are used" (emphasis in original)).

*Webster's Third New Int'l Dictionary* (unabridged ed 2002) defines "force" as

> "**1 a :**  strength or energy esp. of an exceptional degree : active power : vigor \* \* \* **c :** power to affect in physical relations or conditions <the ~ of the blow was somewhat spent when it reached him> <the rising ~ of the wind> \* \* \* **3 a :** power, violence, compulsion, or constraint exerted upon or against a person or thing \* \* \* **b :** strength or power of any degree that is exercised without justification or contrary to law upon a person or thing **c :** violence or such threat or display of physical aggression toward a person as reasonably inspires fear of pain, bodily harm, or death[.]"

*Id.* at 887. Those definitions cover a wide range of conduct: while some definitions of "force" speak to a "violent" or "exceptional" degree of strength, others define the term as "strength or power *of any degree* that is exercised without justification or contrary to law upon a person or thing." *Id.* (emphasis added).

The other words of the statute do not clarify which of those definitions the legislature intended to adopt. Although "force" is modified by the adjective "physical," we have previously explained that the term "physical" indicates only that the force must be bodily or material. *State v. Marshall*, 350 Or 208, 219 n 10, 253 P3d 1017 (2011) (explaining that in determining the meaning of "physical force" in the sexual abuse statute, "'physical' force is simply bodily or material (as opposed to mental or moral) force"). Accordingly, based on the plain text of ORS 166.255, the term "physical force," on its own, does not require any particular quality or degree of force. *See* 350 Or at 220 ("Although most of the [dictionary] definitions of 'force' suggest a significant, rather than a minimal, level of strength or energy, we cannot say that \* \* \* [']physical force' denotes any particular quality or degree of force.").[7]

B.    *Context and Legislative History of ORS 166.255*

Having determined that the ordinary meaning of "physical force" does not unambiguously exclude the "offensive physical contact" element of harassment, we turn to context to help determine what the legislature intended the term to capture. Context for a statute can include

---

[7] We note that neither the state nor defendant ask this court to construe the meaning of "offensive physical contact" in the harassment statute. Accordingly, we focus exclusively on ORS 166.255.

"essentially anything of which the legislature could have been aware at the time of a given enactment." *State v. Azar*, 372 Or 163, 175, 547 P3d 788 (2024) (quoting Jack L. Landau, *Oregon Statutory Construction*, 97 Or L Rev 583, 638 (2019)). This includes "other provisions of the same statute and other related statutes." *PGE*, 317 Or at 611. It can include previously enacted versions of the same statute, or other related statutes, showing how an area of legislation "developed over the years." *Lindell v. Kalugin*, 353 Or 338, 350, 297 P3d 1266 (2013). "Existing case law" also "forms a part of a statute's context." *A.G. v. Guitron*, 351 Or 465, 471, 268 P3d 589 (2011). In this case, the parties have identified different statutes as relevant context for the meaning of "physical force" in ORS 166.255(3)(e).

For defendant, the relevant context is the general structure of the Oregon Criminal Code and the case law interpreting it. Specifically, defendant points to the fact that the "drafters of the criminal code placed the crime of harassment in the chapter concerning public-order offenses, distinguishing it from the spectrum of assaults and likening it to disorderly conduct." *See* Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 92 to 94 (July 1970) ("Mere physical contact which does not produce bodily injury is not covered by the assault article. Trivial slaps, shoves, kicks, etc., are covered by the lesser offense of harassment."). Defendant further notes that case law construing physical force also supports his interpretation, as Oregon courts "routinely have distinguished force crimes from those involving mere contact."

Based on those differences, defendant urges us to apply the canon of consistent usage to conclude that the offensive physical contact element of harassment cannot constitute physical force under ORS 166.255(3)(e). As we explained earlier, that principle of statutory constitution provides that, in the absence of evidence to the contrary, we ordinarily assume that the legislature uses terms in related statutes consistently. *Guzman/Heckler*, 366 Or at 34. Relying upon that interpretive canon, defendant argues that the Criminal Code's general distinction between its

treatment of "physical force" and "offensive physical contact" requires us to conclude that harassment is not a qualifying misdemeanor for purposes of ORS 166.255.

The state, on the other hand, argues that the most relevant statutory context is the VAWA firearms prohibition set out in 18 USC section 921(a)(33)(A). The state argues that the Oregon legislature borrowed the relevant statutory text of ORS 166.255(3)(e) directly from federal law after the United States Supreme Court had interpreted the meaning of "force" in *Castleman* to mean "offensive touching." Accordingly, the state urges us to apply the "borrowed-statute rule." That "rule" is an interpretive principle that, when Oregon enacts legislation that borrows from legislation in another jurisdiction, we "accord a special status to prior interpretation by the highest court of the relevant jurisdiction." *Guzman/Heckler*, 366 Or at 29. That "special status" operates as an interpretive presumption: when the "legislature borrows wording from a statute originating in another jurisdiction, there is a presumption that the legislature borrowed controlling case law interpreting the statute along with it." *Jones v. General Motors Corp.*, 325 Or 404, 418, 939 P2d 608 (1997); *Fleischhauer v. Bilstad et al., Gray et ux.*, 233 Or 578, 585, 379 P2d 880 (1963).

Defendant raises legitimate points regarding the differences between the general treatment of "force" and "contact" in the Criminal Code. However, the canon of consistent usage applies only when there is no evidence that the legislature intended to adopt a different, or statutorily contextual, meaning. Here, as we explain, there is evidence that the legislature intended to adopt a different meaning—namely, the meaning from VAWA. As a result, the VAWA prohibition provides the most persuasive context for interpreting ORS 166.255, and within that context, there is a particular conceptualization of force that equates to the common-law offense of battery. That context-specific meaning renders reliance on the canon of consistent usage contrary to legislative intent in this instance.

In 1996, Congress amended the federal Gun Control Act of 1968 to prohibit firearms possession by persons who had been convicted of a misdemeanor crime of domestic

violence. That prohibition—which we refer to as the VAWA firearms prohibition—is set out in 18 USC section 922(g)(9), while 18 USC section 921 defines the terms used in the prohibition. 18 USC section 922(g)(9) provides, as relevant, that any person "who has been convicted *** of a misdemeanor crime of domestic violence" may not possess a firearm or ammunition. 18 USC section 921(a)(33)(A) defines "misdemeanor crime of domestic violence" as an offense that:

> "(i)   is a misdemeanor under Federal, State, or Tribal law; and

> "(ii)   *has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon*, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim."

(Emphasis added.)

In comparison, the Oregon legislature enacted ORS 166.255 in 2015.[8] Or Laws, ch 497, § 2. That firearm prohibition, introduced as Senate Bill (SB) 525, provided that

> "(1)   It is unlawful for a person to knowingly possess a firearm or ammunition if:

> "* * * * *

> "(b) The person has been convicted of a qualifying misdemeanor and, at the time of the offense, the person was a family member of the victim of the offense.

> "* * * * *

> "(3)   As used in this section:

> "* * * * *

---

[8] The Oregon legislature later amended ORS 166.255 in 2018 and 2019, but neither of those amendments altered the definition of "qualifying misdemeanor" and are not relevant to the issue in this case. The 2018 amendments expanded the class of victims that triggered the prohibition, expanded the reach of the prohibition to include those convicted of stalking, and required the Oregon State Police to enter qualifying convictions into national law enforcement databases. Or Laws 2018, ch 5, §§ 1, 3. The 2019 amendments focused on placing administrative requirements on trial courts in situations where a person is convicted of a qualifying misdemeanor or stalking. Or Laws 2019, ch 201, §§ 1, 3.

"(c) 'Family member' means, with respect to the victim, the victim's spouse, the victim's former spouse, a person with whom the victim shares a child in common, the victim's parent or guardian, a person cohabiting with or who has cohabited with the victim as a spouse, parent or guardian or a person similarly situated to a spouse, parent, or guardian of the victim.

"* * * * *

"(e) 'Qualifying misdemeanor' means a misdemeanor that has, as an element of the offense, the use or attempted use of physical force or the threatened use of a deadly weapon."

Textually, the two laws generally mirror each other. Both statutes prohibit firearm possession for individuals convicted of misdemeanor offenses that have, "as an element" the "use or attempted use of physical force or the threatened use of a deadly weapon." *Compare* 18 USC §§ 921(a)(33)(A), 922(g)(9) *with* SB 525, §§ 2(1)(b), (3)(f). And that prohibition applies only when the misdemeanor is committed by the victim's spouse or former spouse, a person with whom the victim shares a child in common, the victim's parent or guardian, a person cohabitating with or who has cohabitated with the victim as a spouse, parent, or guardian, or a person similarly situated to the spouse, parent, or guardian of the victim. *Compare* 18 USC § 921(a)(33)(A)(ii) *with* SB 525, §§ 2(1)(b), (3)(c).[9]

Although the other provisions of the VAWA prohibition and SB 525 are not at issue in this case, they provide additional contextual support for the conclusion that the legislature intended to parallel federal law. Both laws made it unlawful to possess a firearm or ammunition if subject to a restraining order issued by a court after notice, a hearing, and an opportunity to be heard that includes a finding of a "credible threat" to the physical safety of an intimate partner or child. *Compare* 18 USC § 922(g)(8)[10] *with* SB 525,

---

[9] The legislature amended ORS 166.255 in 2018 to broaden the class of victims that triggered the firearm prohibition, most notably to include adults related by blood or marriage. Or Laws 2018, ch 5, § 1.

[10] 18 USC section 922(g)(8) prohibits possession of a firearm or ammunition by any person:

"(8) who is subject to a court order that—

§ 2(1)(a).[11] Both laws use the term "intimate partner" and define the term to largely cover the same individuals. The one difference between the two definitions is that SB 525 covers a broader range of people by providing that "a person in a relationship akin to a spouse" also qualifies as an "intimate partner." *Compare* 18 USC § 921(a)(32) *with* SB 525 § 2(3)(d). Although the two laws are different in that way, the difference does not support the conclusion that the legislature intended SB 525 to be narrower than the VAWA prohibition.

As for other differences between the statutes, the Court of Appeals noted that 18 USC section 922(g)(9) applies to those convicted of a "misdemeanor crime of domestic violence," while SB 525 applies to those convicted of a "qualifying misdemeanor" against a family member. *Eggers*, 326 Or App at 349. But while the labels are different, the definitions are the same. Under both laws, the "qualifying misdemeanor" is one that has "as an element" the "use or attempted use of physical force," and, to qualify for the firearm prohibition, the misdemeanor must be committed

---

"(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

"(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

"(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

"(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury."

[11] SB 525 section 2(1)(a) provided:

"(1) It is unlawful for a person to knowingly possess a firearm or ammunition if:

"(a) The person is the subject of a court order that:

"(A) Was issued or continued after a hearing for which the person had actual notice and during the course of which the person had an opportunity to be heard;

"(B) Restrains the person from stalking, intimidating, molesting or menacing an intimate partner, a child of an intimate partner or a child of the person; and

"(C) Includes a finding that the person represents a credible threat to the physical safety of an intimate partner, a child of an intimate partner or a child of the person."

against one of the persons identified in the statutes. The enumerated victims are the same under both laws because SB 525's definition of "family member" identifies the same persons as 18 USC section 921(a)(33)(A)(ii). As such, there is no meaningful difference between the two statutes—they cover the same misdemeanors committed against the same class of victims.

The legislative history further confirms that, in enacting SB 525, the legislature intended to mirror the federal firearm prohibition. At SB 525's initial public hearing, several witnesses testified about the need to provide state and local law enforcement with the ability to prevent possession of firearms by domestic violence offenders. *See, e.g.*, Testimony, Senate Committee on Judiciary, SB 525, Mar 25, 2015, Ex 4 (statement of Sen Laurie Monnes Anderson). That testimony consistently cited the lethal link between firearms and domestic violence, noted that federal law has prohibited possession of firearms by domestic violence offenders since the mid-1990s, and identified barriers to enforcing the federal prohibition in Oregon. *See, e.g.*, Testimony, Senate Committee on Judiciary, SB 525, Mar 25, 2015, Ex 5 (statement of Sybil Hebb, Oregon Law Center). Thus, from the start, the undisputed goal of SB 525 was to give local law enforcement agencies and district attorneys the tools to protect victims from lethal domestic violence under state law in the same way as federal law. Testimony, Senate Committee on Judiciary, SB 525, Mar 25, 2015, Ex 7 (statement of Oregon DOJ Domestic Violence Resource Prosecutor Erin Greenawald). The final bill was the product of compromise and intended to conform the Oregon standard to the federal one. Testimony, House Committee on the Judiciary, SB 525, June 1, 2015, Ex 2 (statement of Sen Laurie Monnes Anderson) and Ex 3 (statement of Sybil Hebb, Oregon Law Center).

Because we conclude that both context and legislative history show that the legislature intended to import the federal firearms prohibition into Oregon law, we turn to the borrowed-statute rule. Before applying that principle, we write briefly to address an aspect of the Court of Appeals' reasoning.

The Court of Appeals observed that, because the legislature did not "enact an identical copy" of the federal law, there was no reason to treat caselaw construing the VAWA prohibition as persuasive. *Eggers*, 326 Or App at 349. That statement is too categorical. The borrowed-statute rule does not require a verbatim adoption of the lending jurisdiction's statutory text for it to be persuasive context. *See, e.g.*, *State v. Walker*, 356 Or 4, 23 n 9, 333 P3d 316 (2014) (relying on federal court interpretations of the federal RICO statute, upon which Oregon's RICO statute was modeled, to construe Oregon's RICO statute even though the Oregon provision had been "modified somewhat").

In considering the applicability of the borrowed-statute rule, the similarity of the two statutes represents a continuum. At one end, when the two statutes are virtually identical, the borrowed-statute rule is likely to carry the most persuasive weight. At the other end of the continuum, when the legislature borrows a statute but then substantially changes its structure or terminology, the borrowed-statute rule may give way to the competing interpretive principle that changes in wording are presumed to be meaningful, reflecting a different policy choice. However, a reviewing court must be mindful that not every change to a borrowed statute necessarily reflects a policy choice—some linguistic and structural changes can be an expected product of the legislative drafting process, where statutes from other jurisdictions may be modified to conform to Oregon legislative drafting conventions. For those reasons, the borrowed-statute rule, like all principles of statutory interpretation, is best viewed as a tool to an end, not an end of itself. The goal of statutory interpretation is fidelity to legislative intent, not the mechanical application of interpretive rules. Here, the evidence surrounding the enactment of ORS 166.255 persuades us that, despite minor changes, the legislature intended to import the VAWA prohibition into Oregon law. For those reasons, we conclude that the application of the borrowed-statute rule is appropriate. We turn now to that application.

In 2014—one year prior to the enactment of ORS 166.255—the United States Supreme Court interpreted the term "use or attempted use of physical force" in *Castleman*,

572 US 157. After detailing the role that firearms play in domestic violence deaths, the Court explained that Congress enacted the firearms prohibition to "'close a dangerous loophole' in the gun control laws." *Id*. at 161 (citation omitted). It went on to determine that Congress "incorporated the common-law meaning of 'force'—namely, offensive touching—in section 921(a)(33)(A)'s definition of a 'misdemeanor crime of domestic violence.'" *Id*. at 162-63. To get there, the Court noted that, at common law, the element of "force" in the crime of battery was "satisfied by even the slightest offensive touching" and that a "'common-law term of art should be given its established common-law meaning,' except 'where that meaning does not fit.'" *Id*. at 163 (quoting *Johnson v. United States*, 559 US 133, 139, 130 S Ct 1265, 176 L Ed 2d 1 (2010)).

The Court explained that, because domestic violence offenders are routinely prosecuted under "generally applicable assault or battery laws," it "makes sense for Congress to have classified as a 'misdemeanor crime of domestic violence' the type of conduct that supports a common-law battery conviction." *Id*. at 164. The Court also noted that, although "[m]inor uses of force may not constitute 'violence' in the generic sense," such force can be described as "domestic violence," when "the accumulation of such acts over time can subject one intimate partner to the other's control." *Id*. at 165-66. According to the Court, domestic violence "is not merely a type of 'violence'; it is a term of art encompassing acts that one might not characterize as 'violent' in a nondomestic context." *Id*. at 165. "If a seemingly minor act like [the squeeze of the arm that causes a bruise] draws the attention of authorities and leads to a successful prosecution for a misdemeanor offense, it does not offend common sense or the English language to characterize the resulting conviction as a 'misdemeanor crime of domestic violence.'" *Id*. at 166. Thus, the Court held that the requirement of "physical force" in the definition of misdemeanor crime of domestic violence "is satisfied *** by the degree of force that supports a common-law battery conviction"—*i.e.*, offensive touching. *Id*. at 168.

That common-law definition of battery is the same in Oregon. *See, e.g.*, *Cook v. Kinzua Pine Mills Co. et al.*, 207

Or 34, 48-49, 293 P2d 717 (1956) ("An offensive unpermitted touch may be a battery though no physical damage results."). It is "sufficient if the contact is offensive or insulting." *Bakker v. Baza'r, Inc.*, 275 Or 245, 249, 551 P2d 1269 (1976).

Defendant argues that we should not apply the borrowed-statute rule because there is no direct support for the conclusion that the legislature discussed or was aware of the *Castleman* decision. But we do not require an explicit mention of controlling caselaw in determining that the borrowed-statute rule applies. Instead "when the Oregon legislature borrows wording from a statute originating in another jurisdiction, there is a presumption that the legislature borrowed controlling case law interpreting the statute along with it." *CBI Servs., Inc.*, 356 Or at 593 (quoting *Lindell*, 353 Or at 355); *see also Jones,* 325 Or at 418 (stating the same).[12]

Here, the Oregon legislature unambiguously intended to import the VAWA prohibition into Oregon law; as such, under the borrowed-statute rule, we *presume* that the *Castleman* construction of "physical force" in VAWA was understood and relied upon by the legislature in its enactment of ORS 166.255(3)(e). And while, as a matter of statutory interpretive methodology, that presumption certainly can be overcome, in this case there is no indication that the legislature intended to depart from *Castleman* in any way, and we see nothing in the legislative record to overcome the presumption that the legislature borrowed controlling case law interpreting the VAWA prohibition. Accordingly, the term "physical force" in ORS 166.255(3)(e) covers offensive physical contact. Thus, harassment as defined by ORS 166. 065(1)(a)(A) is a qualifying misdemeanor for purposes of ORS 166.255.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

[12] The borrowed-statute rule, it must be acknowledged, carries certain assumptions about the legislative process—namely that the legislature was, in fact, aware of the controlling caselaw from the foreign jurisdiction. Whether, in light of the general practice of the Oregon legislature, that assumption reflects reality, or is too idealistic, is a question the legislature is in the best position to know. The legislature has expressed its preference for how the judiciary should construe the statutes it enacts in ORS 174.010 - 174.090. It has not expressed a preference that Oregon courts not employ the borrowed-statute rule.